STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: AUGUSTA
Docket No. CV-2013-166

JOSHUA HENDERSON, and STACEY )
HENDERSON, as Personal Representatives )
of the Estate of DENNIS R. KAY, )
 )
Plaintiffs, )
 )
v. )
 )
ESTATE OF DOUGLAS J. WIGGINS et )
al, )
 )
Defendants. )

**ORDER ON THE MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT TRESSA SPRINGMANN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DOUGLAS J. WIGGINS**

Plaintiffs Joshua and Stacey Henderson, as personal representatives of the Estate

of Dennis R. Kay, are seeking to recover against Mr. Wiggins and "Mr. Wiggins d/b/a

Option Rentals" on the theory that Mr. Wiggins negligently caused Mr. Kay's wrongful

death. In particular, Plaintiffs contend that Mr. Wiggins ordered Mr. Kay to carry out a

vehicle transfer in conditions he knew were unsafe for driving. (*See* Amended

Complaint, ¶¶ 22-32 (hereinafter, "Complaint").)

Defendant Tress Springmann, as personal representative of the Estate of Douglas

J. Wiggins, moves to dismiss the Complaint arguing that the claims against Mr. Wiggins

are barred by the Workers' Compensation Act.[1] In support of her motion to dismiss, Ms.

Springmann relies on affidavits and exhibits attached thereto. Because Ms.

Springmann's motion to dismiss relies on documents outside of the pleadings, the court

will treat Ms. Springmann's motion to dismiss as one for summary judgment. *Libner v.*

---

[1] The Complaint asserts a wrongful death cause of action against Ms. Springmann (Count I) as well as a claim for punitive damages stemming from the wrongful death claim (Count III).

1

*Maine County Comm'rs Ass'n*, 2004 ME 39, ¶ 7, 845 A.2d 570 ("if a party files a motion to dismiss and documents outside the pleadings are presented to, and not excluded by, the trial court, [it is] treat[ed] as one for a summary judgment").

Concurrent with this motion, Ms. Springmann also moves for summary judgment against Counts I and III of the Complaint contending, in pertinent part, that the Plaintiffs cannot meet their prima facie burden to establish duty and causation for their wrongful death claim.[2]

For the reasons discussed below, the court grants summary judgment in favor of Ms. Springmann.

## I.     Background

### A. Allegations in Plaintiffs' Complaint

In Plaintiffs' Complaint, they assert that Mr. Wiggins d/b/a Option Rentals provided services to Budget Truck Rental, LLC ("Budget Truck"),[3] including, but not limited to, renting Budget Truck vehicles to customers and coordinating the movement of Budget Truck vehicles among various other business locations throughout New England.

---

[2] As noted in the court's Companion Order in this case granting Budget Truck's motion for summary judgment against the Plaintiffs, Ms. Springmann and Budget Truck raised concerns about the impact of their respective motions for summary judgment against the Plaintiffs' Complaint on one another. In particular, they raised concerns that admissions and/or statements of fact by the other party in connection with their respective motion for summary judgment would be binding on the other. As explained in the Companion Order, pursuant to the November 2011 Advisory Note to M.R. Civ. P. 56, the court finds that the admissions or statements of fact by Ms. Springmann and Budget Truck in their respective motions for summary judgment are not binding on the other party.

[3] At the hearing, counsel for Plaintiffs and counsel for Budget Truck agreed that Budget Truck was the proper defendant and Plaintiffs thereby dismissed their claims against the other so-called Budget defendants: Centre Point Funding, LLC f/k/a Budget Truck Funding, LLC, Avis Budget Car Rental, LLC, and Avis Budget Group, Inc. Accordingly, for the sake of convenience, the court will treat any references to the Budget defendants as pertaining to Budget Truck.

(Pls.' Complaint ¶ 12.) Plaintiffs allege that Mr. Wiggins d/b/a Option Rentals "substantially disregarded the safety of his employees and the public in general," "knew that certain drivers operating under his employ were not licensed to operate motor vehicles," "would often instruct drivers...to operate [Budget Truck] vehicles with an insufficient number of seats to safely seat each driver inside the vehicle," and "knew that those drivers without proper seating would sit in the cargo area of the vans in lawn chairs or on blankets while traveling...." (*Id.* at ¶¶ 14-17.) More specifically, Plaintiffs assert that on December 30, 2011 and again on December 31, 2011—the day of Mr. Kay's allegedly wrongful death—Mr. Wiggins ordered Mr. Kay to use a Budget Truck vehicle to carry out a vehicle transfer. (*See id.* at ¶¶ 22-23.) Mr. Wiggins allegedly ordered Mr. Kay to make this transfer despite knowing there were dangerous weather conditions. (*Id.* at ¶ 23.) While carrying out the transfer, Mr. Kay lost control of his vehicle due to dangerous road conditions and crashed. (*Id.* at ¶¶ 28, 31-32.) Mr. Kay was killed in the crash. (*Id.* at ¶ 32.)

Plaintiffs' Complaint asserts that Mr. Wiggins d/b/a Option Rentals "hired and paid Dennis Kay on a regular basis to perform for Option Rentals" and that "Dennis Kay was an employee of Douglas Wiggins d/b/a Option Rentals." (*Id.* at ¶¶ 18-19.) The Amended Complaint does *not* allege that Mr. Kay was an independent contractor for Douglas Wiggins d/b/a Option Rentals.

B. Pertinent Facts From the Summary Judgment Record

a. *The December 29, 2011 Trip*

Mr. Wiggins ordered Mr. Kay to perform a Budget Truck transfer on December 28, 2011 at 11:00 p.m. (Pls.' A.S.M.F. ¶ 57.) Mr. Kay and other drivers returned from

3

that transfer during the early morning hours of December 30, 2011. (*Id.* at ¶ 58.) Mr. Kay was supposed to perform another Budget Truck transfer for Option Rentals on the evening of December 30, 2011. (*Id.* at ¶ 59.) However, on the afternoon of December 30, 2011, Mr. Kay made his reservations known to Mr. Wiggins about performing a transfer in inclement weather. (*Id.* at ¶ 60.) In particular, Mr. Kay spoke to Mr. Wiggins about the weather and the potential for a storm. (*Id.* at ¶ 61.) Mr. Wiggins responded that if the transfer did not occur on the evening of December 30, 2011, it would need to occur on the morning of December 31, 2011. (*Id.* at ¶ 62.)

### b. *The December 31, 2011 Accident*

On the morning of December 31, 2011, Mr. Kay picked up his grandsons, Carlton Norwood and Thomas Bourque, in a Budget Truck van to perform the transfer. (Pls. A.S.M.F. ¶ 64.) Mr. Bourque testified that when he talked to Mr. Kay on December 30, 2011, Mr. Kay commented that the 31st might be a better day for the transfer because it was only supposed to rain. (Exhibit A to Ms. Springmann's S.M.F., Deposition of Thomas Bourque ("Bourque Dep.") 46.) However, as far as Mr. Bourque knew, the December 31, 2011 transfer could have been carried out on January 1 or 2. (*Id.* at 44.)

Mr. Bourque explained that when Mr. Kay picked him up on the morning of the 31st, Mr. Kay was happy that the weather was, at the moment, decent for traveling. (*Id.*) After picking up Mr. Bourque, Mr. Kay drove the group to Ainslie's Market in Gardiner, Maine. (*Id.* at 50-51.) Ainslie's Market is approximately a mile and a half to two miles from Mr. Bourque's house. (*Id.* at 19.)

At Ainslie's Market, Mr. Bourque exited the van and testified that there was a temperature difference between the time he was picked up by Mr. Kay and the time they

4

arrived at Ainslie's. (*Id.* at 51.) He also testified that after the crash, he may have told Stacey Henderson, Mr. Kay's daughter, that the temperature dropped 20 degrees in the ten minutes he was in the market. (*Id.*) He also stated that the roads were fine one minute and then the next minute, "the roads were just- - everything happened so fast." (*Id.* at 52.)

Joshua Henderson, Mr. Kay's son, testified that around 7:00 am on the morning of the 31st, he told his father that bad weather was coming in. (Exhibit D to Ms. Springmann's S.M.F., Deposition of Joshua Henderson ("J. Henderson Dep.") 40.) This statement was in reference to the fact that Joshua had heard that there was a chance of snow later in the day. (*Id.*) Mr. Kay, however, told Joshua that the roads were wet, but it was very warm. (*Id.* at 40-41.) While Joshua was talking to Mr. Kay on the phone, he looked over at a bank clock and saw that it read 40 degrees. (*Id.* at 41.)

At 8:00 a.m. on the 31st, Joshua testified that he was told to go outside at his workplace and place salt because the temperature "just dropped dramatically[.]" (*Id.*) Joshua described the weather change as "like a SciFi movie. It was like a flash froze [sic]...." (*Id.*) When he went out to salt, Josh testified that the ground was "glazed over, really iced, yes, and it was very, very cold...." (*Id.* at 42.) The co-worker who asked Joshua to go outside and salt "was standing outside smoking a cigarette" and stated "isn't it f___ weird?" to which Joshua responded "real weird it seems. It was just warm out a few seconds ago." (*Id.*)

To his knowledge, Joshua Henderson testified that neither Mr. Wiggins nor Mr. Kay knew the weather was going to be bad on December 31, 2011. (*Id.* at 53-54; *see also* Exhibit E. to Ms. Springmann's S.M.F., Deposition of Stacey Henderson ("S. Henderson ‚Dep.") 106-108) (testifying that, as far as she knew, neither Mr. Wiggins nor Mr. Kay

5

knew that the roads were going to get icy later in the morning of December 31, 2011).)

Joshua opined that it was just a freak accident. (J. Henderson Dep. 55.) Consistent with this opinion, Mr. Kay's children and other relatives stated that Mr. Kay would not have taken his grandsons, Messrs. Bourque and Norwood, out on the road that day if he thought the road conditions would be unsafe. (*See id* at 54; Bourque Dep. 46-47; S. Henderson Dep. 108; Exhibit F to Ms. Springmann's S.M.F., Deposition of Donna Henderson ("D. Henderson Dep.") 40-41.)

The former store manager for Option Rentals, Kimberly McGruder testified that she arrived at Option Rentals, from her home in Chelsea, Maine, at 8:00 am on the morning of December 31, 2011. (Exhibit C to Pls.' A.S.M.F., Deposition of Kimberly McGruder ("McGruder Dep.") 7-8.) She testified that on her drive in to work the roads were slick and her car was sliding off the road, although she managed to keep it on the road. (*Id.* at 8.) Similarly, Robert A Maskell, who knew both Mr. Wiggins and Mr. Kay, testified that December 31, 2011 "was a slippery day. It was a bad day for --you know -- weatherwise, you didn't know where it was going to be slippery and where it wasn't going to be. And up in their area where they were moving vehicles, it was very slippery." (Exhibit G to Pls.' A.S.M.F., Deposition of Robert Maskell ("Maskell Dep."), 14-15.)

Official weather records from the National Oceanic and Atmospheric Administration ("NOAA") indicate that the high temperature in the City of Gardiner, Maine on December 31, 2011 was below freezing at 27 degrees Fahrenheit. (Exhibit J to Pls.' A.S.M.F., NOAA Records.) That same day, NOAA records indicate the high temperate in the City of Augusta was 33 degrees Fahrenheit, with a low of 24 degrees and 0.16 inches of precipitation that day. (*Id.*)

6

After leaving Ainslie's Market, Mr. Kay lost control of the van and crashed. (*See* Ms. Springmann's S.M.F. ¶ 1; Bourque Dep. 20.) Mr. Bourque testified that the accident occurred approximately 1½-2 miles from Ainslie's. (Bourque Dep. 20.) Mr. Kay was ejected from the van and died as a result of the accident. (Ms. Springmann's S.M.F. ¶ 3.)

### c. *Post Accident Investigation*

Gardiner Police Officer, Daniel S. Murray, testified that both he and Trooper Christopher Rogers agreed "that it didn't look like excessive speed was involved" in the accident and that "given the nature of the road change, it is not unreasonable to assume they were traveling the speed limit when they encountered the sudden shift in road conditions." (Exhibit B to Ms. Springmann's S.M.F., Deposition of Officer Murray ("Murray Dep.") 25-26.) He also testified, however, that it "would not be an unreasonable position" to opine that the vehicle was driving too fast for the conditions that day. (*Id.* at 26.) Officer Murray qualified this statement by explaining that "the road conditions changed very quickly. It wasn't a gradual onset. It was like a flash because I was surprised approaching the scene where you have that unh-oh feeling." (*Id.*) Officer Murray explained that on his way to the scene of the accident, "there was a difference between the road conditions near Ainslie's Market and the road conditions closer to the scene of the accident." (*Id.* at 15.) In particular, he testified that the road conditions "went from just wet to frozen" and opined that while he was not aware of a change in the temperature that morning, "[t]here must have been some change because it was wet in the Ainslie's area and in the accident scene, it was obviously a temperature grading of some kind that caused the road conditions to change dramatically." (*Id.* at 15-16.)

7

Trooper Rogers, an accident reconstructionist, stated that his theory about how the accident occurred was a combination of "[i]cy roads and a vehicle traveling too fast for those conditions." (Exhibit C to Ms. Springmann's S.M.F., Deposition of Trooper Rogers ("Rogers Dep.") 3, 16-17.) He explained, however, that he wasn't able to determine how fast the van was going at the time of the accident, but estimated it would not have been going much faster than the posited speed limit of 55 mph. (*Id.* at 17.) In his opinion, a speed of 55 miles per hour was too fast for the icy roads, but he acknowledged that "it is difficult with icy roads because a half mile back, they may not be icy so it may be fine there...." (*Id.*)

When asked whether there was a flash freeze or sudden change in the weather that caused the conditions at the scene of the accident, Trooper Rogers testified that he "vaguely remember[ed] it being icy in other areas around that area that day" and didn't "think it was just that area, no." (*Id.* at 18.) In responding to the question, he explained that he was trying "to put myself back in that cruiser that day driving and I remember being at a couple different spots and guys talking on the radio back and forth about it being icy." (*Id.* at 18.) He also testified that the weather on the morning of the accident was "cloudy, rainy, misty. Just kind of a dreary day" and that, "for the road to freeze over the way they [sic] did" must have meant the temperature was in the low 30s. (*Id.* at 13.)

d. *Mr. Wiggins' Post Accident Statements*

Ms. McGruder testified that in the first week of January 2012, Mr. Wiggins stated that "if it were up to him, he would not have sent [Mr. Kay] out on the morning of December 31 because the weather conditions were too dangerous." (McGruder Dep. 62, 76-77.) Similarly, Mr. Maskell stated that he spoke with Mr. Wiggins after the accident

8

and Mr. Wiggins expressed concern that Mr. Kay's family was going to sue him. (Maskell Dep. 15.) Mr. Wiggins allegedly stated that Mr. Kay's family should sue Budget Truck instead of him because Budget Truck actually told Mr. Kay where to go on the trip. (*Id.*) Mr. Wiggins also allegedly told Mr. Maskell that he did not know about the vehicle transfer on December 31 and that he would not have had Mr. Kay do the trip. (*Id.* at 15-16.) Mr. Wiggins further allegedly stated that "he came from – his house is north of there and he said it was pretty slippery coming in and that it was patchy and that he wouldn't have sent them out." (*Id.* at 21.) Mr. Maskell testified that in his opinion, Mr. Kay would not have gone out if the weather was questionable because "[i]t's kind of one of those relationships where if it was slippery and Dennis felt like he didn't want to go, he would not go." (*Id.*)

## II.    Discussion

"In both motions to dismiss pursuant to M.R. Civ. P. 12(b)(6) and motions for summary judgment pursuant to M.R. Civ. P. 56, the trial court views the pleadings and evidence in the light most favorable to the nonmoving party...." *Nader v. Maine Democratic Party*, 2012 ME 57, ¶ 30, 41 A.3d 551. When interpreting pleadings, it is important to keep in mind that Maine is a notice pleading state. *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79. Notice pleading is forgiving, meaning that a complaint need only give fair notice of the cause of action by providing a short and plain statement of the claim showing that the pleader is entitled to relief, and then make a demand for that relief. *Id.* The complaint does not have to identify the particular legal theories that will be relied upon, but it must "describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her

9

to relief." *Id.* (quoting *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823).

"To survive a defendant's motion for a summary judgment, the plaintiff[s] must establish a prima facie case for each element of [their] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements [of material fact] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *North East Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 773. In addition to the specific facts set forth by the parties, the court will also draw any reasonable inferences that a fact finder could draw from the given facts. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. Those inferences will be drawn in favor of the non-moving party. *Id.* When facts or reasonable inferences are in dispute on a material point, the court will not enter summary judgment. *Id.*

At the same time, summary judgment is appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶14 n.3, 48 A.3d 774 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue...if the non-moving party rests merely upon conclusory allegations,

10

improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144-45 (Me. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045.

### A. Whether Ms. Springmann Should be Judicially Estopped From Asserting an Argument on the Premise that Mr. Kay was an Employee of Douglas Wiggins d/b/a Option Rentals

Plaintiffs argue that Ms. Springmann's motion to dismiss—being treated as a motion for summary judgment—should be denied because she should be judicially estopped from arguing that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals. Plaintiffs contend that prior to the present motion, Ms. Springmann consistently denied the allegation that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals. Instead, Ms. Springmann asserted that Mr. Kay was an independent contractor who had done work for Option Rentals and Budget Truck. For example, paragraph 19 of the Amended Complaint asserts that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals. Ms. Springmann responded to this allegation by stating that it "sets forth a legal conclusion to which no response is required[, but] [t]o the extent a response is required [Ms.] Springmann denies the allegation of Paragraph 19...." (Ms. Springmann's Ans. ¶ 19.) Similarly, Ms. Springmann asserted in her opposition to Plaintiffs' motion ,for leave to amend that Mr. Kay was an independent contractor for Option Rentals, not an

11

employee. (Ms. Springmann's Memorandum of Law in Opp. to Pls.' Mot. for Leave to File Amended Complaint, 2-3.) As a result, Plaintiffs argue that Ms. Springmann should be judicially estopped from asserting that Mr. Kay was an employee of Option Rentals because, in light of their denial, they should not benefit from the exclusivity provisions afforded by the Workers' Compensation Act.

Ms. Springmann responds that she has not changed her position about the employment status of Mr. Kay. To the contrary, she still maintains Mr. Kay was an independent contractor and not an employee of Mr. Wiggins d/b/a Option Rentals. For purposes of the present motion, however, she challenges the legal sufficiency of the Complaint under 39-A M.R.S.A. § 104 based on the Complaint's allegations that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals.

Judicial estoppel is a doctrine which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Maine Educ. Ass'n v. Maine Community College System Bd. of Trustees*, 2007 ME 70, ¶ 16, 923 A.2d 914 (quoting *New Hampshire v. Maine*, 352 U.S. 742, 749 (2001)). Judicial estoppel does not require that the issue have been actually litigated in the prior phase of the proceeding. *Id.* Instead, judicial estoppel is designed "to protect the integrity of the judicial process." *Id.* at ¶ 17. While the contours of judicial estoppel are not sharply defined, and there is no mechanical test for determining its applicability, the U.S. Supreme Court suggested courts consider the following three factors in determining the doctrine's applicability:

> (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception of inconsistent

12

court determinations, suggesting that either the first or second court was misled; and (3) whether an unfair advantage or detriment would be created.

*Id.* at ¶¶17-18 (citing *New Hampshire v. Maine*, 532 U.S. at 750-51). Following *New Hampshire v. Maine*, the Law Court addressed judicial estoppel stating:

> To judicially estop an entity from asserting a position in a subsequent legal action (1) the position asserted in the subsequent legal action must be clearly inconsistent with a previous position asserted; (2) the party in the previous action must have successfully convinced the court to accept the inconsistent position; and (3) the party must gain an unfair advantage as a result of their change of position in the subsequent action.

*Linnehan Leasing v. State Tax Assessor*, 2006 ME 33, ¶ 25, 898 A.2d 408 (citing *New Hampshire v. Maine*, 532 U.S. at 750-51).

Here, Plaintiffs' argument that Ms. Springmann should be judicially estopped is misguided. Ms. Springmann has not argued, in fact, that Mr. Kay was not an employee of Mr. Wiggins d/b/a Option Rentals. To the contrary, she argues that accepting the Complaint's allegation that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals as true for the purposes of the present motion to dismiss, the Complaint is barred by the Workers' Compensation Act. Accordingly, Ms. Springmann's motion is not inconsistent with her repeated assertions that Mr. Kay was in independent contractor and judicial estoppel is not warranted.

Furthermore, Ms. Springmann will not gain an unfair advantage by proceeding on the premise that Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals because the Plaintiffs have asserted, and rely upon, this very position. In essence, Plaintiffs are asking the court to ignore the legal ramifications that would stem from accepting the premise of their claim against Mr. Wiggins. Because this could result in the Plaintiffs proceeding without a cognizable cause of action, the court will not apply judicial

13

estoppel. *See Frank v. L.L. Bean*, 352 F.Supp.2d 8, (D. Me. 2005) (no subject matter jurisdiction where defendant was exempt from liability for common law torts under the Maine Workers' Compensation Act).

> B. Whether Ms. Springmann Presented Sufficient Evidence to Demonstrate that Mr. Wiggins Had Obtained a Workers' Compensation Policy

Ms. Springmann argues that Mr. Wiggins obtained workers' compensation insurance sufficient to invoke the immunity and exclusivity provisions of the Workers' Compensation Act. In support, she relies on an affidavit from Karen Schwartz, an employee of Maine's Employers' Mutual Insurance Company ("MEMIC"). Ms. Schwartz states that for the period of July 15, 2011 to July 15, 2012—which includes the date of the accident—Mr. Wiggins "had workers' compensation insurance that provided coverage for compensable losses sustained by his employees." (Affidavit of Karen Schwartz ("Schwartz Aff.") ¶ 2.) Ms. Schwartz attached a copy of the Declarations Page of the Workers Compensation Insurance Policy issued by MEMIC to Mr. Wiggins for the period at issue. (*Id.* at ¶ 3 and Exhibit 1 thereto.)

Plaintiffs' contend that the affidavit and copy of the declarations page of the workers' compensation insurance policy are insufficient evidence to prove the policy bars their claims. In support, they point to *Philbrook v. Gates Formed-Fibre Products, Inc.*, 36 A.2d 1118, 1120 (Me. 1998), discussed in greater detail below.

Ms. Springmann replies that Ms. Schwartz's affidavit provides sufficient evidence to establish that Mr. Wiggins secured appropriate workers' compensation insurance. In particular, she argues that Ms. Schwartz attested to the nature and scope of the coverage, confirming that "Douglas Wiggins had workers' compensation insurance that provided

14

coverage for compensable losses sustained by his employees" at the time of the accident. (*See* Schwartz Aff. ¶ 2.) Ms. Springmann also argues there is nothing in the law that says the whole policy must be produced, as opposed to the declarations page and an affidavit from a person with knowledge. In support, she points out that Ms. Schwartz could not have attested that coverage was provided if MEMIC had not filed with the Workers' Compensation Board notice of the policy pursuant to 39-A M.R.S.A. § 403(1). Finally, Ms. Springmann argues that the public record confirms Mr. Wiggins had workers' compensation insurance in place at the time of the accident as evidenced by the electronic verification sent by MEMIC. She argues that by law, insurance companies issuing workers' compensation policies in Maine are required to submit electronic verification to the Workers' Compensation Board for every employer for whom a workers' compensation policy is issued. In a supplemental affidavit provided by Ms. Schwartz, she attaches a printout of the electronic verification Mr. Wiggins received from MEMIC for the pertinent workers' compensation policy. (Supplemental Affidavit of Ms. Schwartz ("Supp. Schwartz Aff.") ¶¶ 4-5 and Exhibit 1 thereto.)

"The immunity and exclusivity provisions of the Workers' Compensation Act provide that if an employer has secured the payment of workers' compensation for its employees, it is immune from suit for personal injuries resulting from work-related injuries, and the employee is deemed to have waived his or her right of action at common law and under [39-A M.R.S.A. §] 104 to recover damages for the injuries." *Marcoux v. Parker Hannifin/Nichols Portland Div.*, 2005 ME 107, ¶ 6, 881 A.2d 1138 (quotation omitted). Section 104 provides, in pertinent part, that:

> An employer who has secured the payment of compensation in conformity with sections 401 to 407 is exempt from civil actions, either at common

15

law or under sections 901 to 908; Title 14, sections 8101 to 8118; and Title 18-A, section 2-804, involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries.

39-A M.R.S.A. § 104. One of the ways to secure the payment of compensation for an employee is by obtaining coverage under a workers' compensation insurance policy. 39-A M.R.S.A. § 403(1); *see also Philbrook*, 536 A.2d at 1120. 39-A M.R.S.A. § 403(1) provides, in pertinent part, that:

> The employer may comply with this section by insuring and keeping insured the payment of such compensation and other benefits under a workers' compensation insurance policy. The insurance company shall file with the board notice, in the form required by the board, of the issuance of any workers' compensation policy to an employer....

(emphasis added). Section 403 does not indicate any particular type of coverage is required. In addition, 39-A M.R.S.A. § 407 does not intimate that a satisfactory workers' compensation policy must contain any particular terms. Instead, it provides:

> An employer with a currently approved workers' compensation policy or a currently accepted self-insurance policy under sections 401 to 407 is deemed to be in compliance with this Act until the expiration or cancellation date of the current assent based on the policy or plan.

In *Philbrook*, the Law Court reversed the trial court's grant of summary judgment based on the Workers' Compensation Act bar because there was a genuine factual issue. 536 A.2d at 1119. In that case, it was undisputed that the plaintiff applied for and received workers' compensation benefits for his injury. *Id.* at 1120. However, the defendant did not offer a copy of the workers' compensation insurance policy under which the plaintiff was apparently covered into evidence. *Id.* In addition, the record did not indicate whether the policy had been filed with and approved by the Superintendent of Insurance as required by the Workers' Compensation Act. *Id.*, Accordingly, the Law

16

Court found that the evidence before the trial court was not legally sufficient to require the entry of summary judgment for the defendant as a matter of law. *Id.*

On the other hand, in *Beverage v. Cumberland Farms Northern, Inc.*, the Law Court affirmed an award of summary judgment against the plaintiff on the grounds of the Workers' Compensation Act bar when the employer supported its defense with an affidavit. 502 A.2d at 486. In that case, however, the plaintiff-employee did not challenge the employer's proof of insurance.

Here, like *Philbrook*, Ms. Springmann has not offered a copy of the complete workers' compensation insurance policy into the record. She has, however, offered an affidavit attesting that Mr. Wiggins had a workers' compensation insurance policy that provided coverage for compensable losses sustained by Mr. Wiggins' employees for the time period when the accident took place. In addition, Ms. Schwartz attached a copy of the Declaration Pages of the policy and a printout of MEMIC's electronic verification of the policy. As discussed above, the Workers' Compensation Act does not provide any specifics as to the contents of a sufficient workers' compensation policy. To the contrary, the Act generally calls for an employer to obtain a workers' compensation insurance policy. 39-A M.R.S.A. § 403. Once this is done, an employer with an approved workers' compensation policy "is deemed to be in compliance with this Act...." 39-A M.R.S.A. § 407. Because Ms. Springmann has presented uncontested evidence that Mr. Wiggins d/b/a Option Rentals had a workers' compensation policy, and said policy was approved and verified by MEMIC, the court finds there is no genuine issue of material fact that the immunity and exclusivity provisions of the Workers' Compensation Act ,apply.

17

C. Whether the Workers' Compensation Act Requires the Court to Grant Summary Judgment in Ms. Springmann's Favor

Ms. Springmann argues that in the Complaint, the Plaintiffs have asserted that Mr. Kay was an employee injured in the course and scope of his employment with Mr. Wiggins d/b/a Option Rentals. Plaintiffs do not dispute this point, maintaining in their opposition that they "have asserted from the start that Dennis Kay was an employee of Douglas Wiggins d/b/a Option Rentals. (Pls.' Opp., 6 (citing Complaint ¶ 14).)

As discussed above, the Workers' Compensation Act provides, in pertinent part, that an employer who has secured a workers' compensation insurance policy "is exempt from civil actions...involving personal injuries sustained by an employee arising out of and in the course of employment, or for death resulting from those injuries." 39-A M.R.S.A. § 104; *see also* 39-A M.R.S.A. §§ 403, 407. An employee is specifically defined under the Workers Compensation Act to exclude "[a]n independent contractor." 39-A M.R.S.A. §102(11)(A)(7).[4] Accordingly, the Workers' Compensation Act exempts an employer from civil actions brought against it by an employee, but not actions brought by an independent contractor. *See e.g. West v. C.A.M. Logging*, 670 A.2d 934, 936 (Me. 1996) (vacating and remanding determination by the Workers' Compensation

---

[4] In determining whether an individual is an employee or an independent contractor, the definition of an independent contractor in the Workers' Compensation Act explains that:
> A person who performs services for remuneration is presumed to be an employee unless the employing unit proves that the person is free from the essential direction and control of the employing unit, both under the person's contract of service and in fact and the person meets specific criteria.

39-A M.R.S.A. § 102(13-A). In order for a person to be an independent contractor, a person must overcome the presumption by satisfying a number of criteria. *See* 39-A M.R.S.A. § 102(13-A)(A)-(B).

Commission denying benefits on grounds that individual was an independent contractor rather then employee).

Here, the Complaint clearly asserts Mr. Kay was an employee of Mr. Wiggins d/b/a Option Rentals. (Complaint ¶ 19.) In addition, the Complaint indicates through less direct allegations that it is premised on an employer-employee relationship. (*See id.* at ¶¶ 14-15, 18.) Furthermore, the Plaintiffs explicitly reasserted their position that Mr. Kay was an employee in their opposition. Given the Plaintiffs' continued and unwavering reliance on the argument that Mr. Kay was an employee, summary judgment is warranted pursuant to the Workers' Compensation Act bar.

While Plaintiffs' Complaint would not be barred by the Workers' Compensation Act if they contended Mr. Kay was an independent contractor, where the Plaintiffs are explicit in the theory on which they wish to pursue their cause of action, the court will not put words in their mouth. Furthermore, even if the court were to find that the Workers Compensation Act did not bar Plaintiffs' Complaint, summary judgment would still be warranted because, as discussed below, no reasonable juror could find that Mr. Wiggins proximately caused Mr. Kay's injuries.

### D. No Reasonable Juror Could Find that Mr. Wiggins' Conduct was a Proximate Cause of Mr. Kay's Injuries

Ms. Springmann argues that the Plaintiffs cannot establish that Mr. Wiggins proximately cause Mr. Kay's death because the accident was the result of 1) a sudden drop in temperature that caused the road surface to freeze combined with 2) Mr. Kay driving too fast for the icy conditions. This, and additional arguments, were adopted by Budget Truck and addressed in this court's Companion Order on Budget Truck's motion for summary judgment. The court granted Budget Truck's motion for summary

19

judgment finding that even if Budget Truck were vicariously liable for the actions of Mr. Wiggins, no reasonable juror could find Budget Truck proximately caused Mr. Kay's injuries.

In order to survive summary judgment, Plaintiffs must make out a prima facie case that Mr. Wiggins proximately caused Mr. Kay's death. *See Crowe v. Shaw*, 2000 ME 136, ¶ 9, 755 A.2d 509. The principle of proximate cause contains two elements, substantiality and foreseeability. *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223. In particular, "evidence is sufficient to support a finding of cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Id.* (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 77). "[T]here may be more than one proximate cause of a particular injury." *Fournier v. Rochambeau Club*, 611 A.2d 578, 579 (Me. 1992). However, "[t]he mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment." *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 77 (citations omitted).

The question of whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries is generally a question of fact reserved for the jury's determination. *Tolliver*, 2008 ME 83, ¶ 42, 948 A.2d 1223. However, a jury cannot find proximate caused based only on speculation or where a claim is wholly unsupported by the evidence. *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 18, 60 A.3d 759.

20

Here, while the underlying facts as presented on summary judgment are not identical to those in the Budget Truck Companion Order, they are substantively the same. In particular, both summary judgment records made clear that on the afternoon of December 30, 2011, Mr. Wiggins ordered Mr. Kay to carry out the vehicle the following morning. (Pls. A.S.M.F. ¶¶ 57-62.). In addition, there is no evidence that Mr. Kay voiced any concern about performing the transfer the following morning due to inclement weather. (*See id.*) While there is conflicting evidence regarding the nature of the weather conditions on the morning of December 31, 2011 and Mr. Wiggins' knowledge of said conditions, it is clear that Mr. Kay crashed the van after leaving Ainslie's Market due to poor driving conditions, i.e. icy roads. (Ms. Springmann's S.M.F. ¶ 1; Bourque Dep. 20; Murray Dep. 15-16; Rogers Dep. 16-17.)

As explained in the Companion Order on Budget Truck's motion for summary judgment, no reasonable juror could find Mr. Wiggins was the proximate cause of Mr. Kay's injuries. This is because Mr. Wiggins' conduct simply gave rise to the occasion which made Mr. Kay's injuries possible. *See Wanless v. Winner's Corp.*, 341 S.E.2d 250, 252 (Ga. App. 1986) (finding as a matter of law that the defendant's alleged negligence of ordering employee to come in to work despite employee's reservations about driving in inclement weather did not proximately cause the decedent's death because "the conduct of defendant could have done nothing more than give rise to the occasion which made plaintiff's injuries possible"). Mr. Wiggins' actions did not play a substantial part in bringing about Mr. Kay's injuries. *See id.* Instead, those injuries were brought about due to the annual risks posed by Maine's relatively harsh winters. *Id; see Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶ 21, 26 A.3d 787 ("In determining the

21

existence and scope of a duty in cases involving injuries sustained as a result of snow and ice conditions, we are informed by the annual risks created by the relatively harsh winters in Maine and recognize that requiring landowners or non-possessors to fully protect against hazards created by snow and ice [is] simply impracticable" (internal quotation omitted); *Alexander v. Mitchell*, 2007 ME 108, ¶ 31, 930 A.2d 1016 ("creating a new duty is disfavored because of the pervasiveness of the annual risk created by ice and snow on Maine roads"). Accordingly, summary judgment is warranted against the Plaintiffs' wrongful death cause of action against Ms. Springmann.

### E. Plaintiffs' Cause of Action for Punitive Damages Fails

"Punitive damages must be based on underlying tortious conduct by the defendant." *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 155 (Me. 1979). Here, the court has ruled that summary judgment is warranted against Count I of the Plaintiffs' Complaint because it is barred by the Workers' Compensation Act and, in any event, fails to make out a prima facie case of wrongful death. Because this is the only cause of action underlying Plaintiffs' request for punitive damages, there is no underlying tortious conduct from which Plaintiffs can seek to recover punitive damages. Accordingly, the court grants summary judgment against Plaintiffs' cause of action for punitive damages as to Ms. Springmann.

## III. Conclusion

For the reasons discussed above, the court grants summary judgment against Plaintiffs' wrongful death cause of action because it is barred by the Workers' Compensation Act. Furthermore, even if the claim were not barred, summary judgment would be warranted because Plaintiffs have failed to make out a prima facie showing that

22

any conduct by Mr. Wiggins was a proximate cause of Mr. Kay's injuries. Because summary judgment is warranted against Plaintiffs' wrongful death cause of action on both of these grounds, the court need not—and does not—address Ms. Springmann's argument regarding Mr. Wiggins' alleged lack of duty towards Mr. Kay.

Finally, because the award of summary judgment against plaintiffs' wrongful death cause of action disposes of the underlying tortious conduct from which plaintiffs seek to recover punitive damages, the court grants summary judgment against plaintiffs' cause of action for punitive damages as to Ms. Springmann.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: May 14, 2015

_____
Michaela Murphy, Justice
Maine Superior Court

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
LOCATION: AUGUSTA
Docket No. CV-2013-166

JOSHUA HENDERSON, and STACEY )
HENDERSON, as Personal Representatives )
of the Estate of DENNIS R. KAY, )

Plaintiffs, )

v. )

ESTATE OF DOUGLAS J. WIGGINS et )
al, )

Defendants. )

**ORDER ON BUDGET TRUCK
RENTAL, LLC'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiffs Joshua and Stacey Henderson, as personal representatives of the Estate

of Dennis R. Kay, seek to recover against Defendant Budget Truck Rental, LLC ("Budget

Truck") by holding it vicariously liable for the alleged negligence of Douglas J. Wiggins

and "Mr. Wiggins d/b/a Option Rentals" on the theory that Mr. Wiggins' alleged

negligence resulted in the wrongful death of Mr. Kay.[1] In particular, Plaintiffs contend

that Mr. Wiggins ordered Mr. Kay to carry out a vehicle transfer in conditions he knew or

should have known were hazardous for driving.

---

[1] At the hearing, counsel for Plaintiffs and counsel for Budget Truck agreed that
Budget Truck was the proper defendant and Plaintiffs thereby dismissed their
claims against the other so-called Budget defendants: Centre Point Funding, LLC
f/k/a Budget Truck Funding, LLC, Avis Budget Car Rental, LLC, and Avis Budget
Group, Inc.

1

Budget Truck seeks summary judgment against Counts II and III of Plaintiffs' Complaint for wrongful death and punitive damages, respectively. These are the only Counts asserted against Budget Truck in Plaintiffs' Complaint.[2]

Budget Truck argues that even accepting Plaintiffs' argument that it is vicariously liable for the acts of Mr. Wiggins, summary judgment is warranted because Plaintiffs have not established Mr. Wiggins had a duty towards Mr. Kay or that any conduct of Mr. Wiggins' caused Mr. Kay's death. Budget Truck also argues that neither Mr. Kay nor Mr. Wiggins d/b/a Option Rentals was an employee or agent of Budget Truck in the transfer of vehicles. As a result, Budget Truck contends it cannot be held vicariously liable for Mr. Wiggins' alleged negligence. In addition, Budget Truck argues Plaintiffs' cause of action for punitive damages should be dismissed because they cannot show that Budget Truck acted with implied or express malice towards Mr. Kay.[3]

---

[2] The other Count of Plaintiffs' Complaint, Count I, along with Plaintiffs' request for punitive damages against Defendant Tress Springmann, as the personal representative of the Estate of Douglas J. Wiggins, is addressed in a Companion Order on Ms. Springmann's motion to dismiss and motion for summary judgment against Plaintiffs' Complaint.

[3] Budget Truck and Ms. Springmann raised concerns about the impact of their respective motions for summary judgment against the Plaintiffs' Complaint on one another. In particular, Budget Truck and Ms. Springmann are concerned that admissions and/or statements of fact by the other party in connection with their respective motion for summary judgment will be binding on the other. Pursuant to the November 2011 Advisory Note to M.R. Civ. P. 56, the court finds that the admissions or statements of fact by Ms. Springmann and Budget Truck in their respective motions for summary judgment are not binding on the party. This is because Rule 56(d) was amended "to make it unnecessary to controvert facts for purposes of summary judgment solely because of concern about the possible preclusive effect of any admission of fact at trial or in other subsequent proceedings. M.R. Civ. P. 56-Advisory Note – November 2011. Accordingly "a fact admitted or not opposed by any party solely for purposes of summary judgment is not deemed admitted for any other purpose if the motion for summary judgment is denied." *Id.* Under the present circumstances, the court believes this rule—intended towards the parties actively engaged in the motion for summary judgment—should be

2

For the reasons discussed below, the court grants Budget Truck's motion for summary judgment against Counts II and III of Plaintiffs' Complaint.

## I. Factual Background

### A. Budget Truck's Business

Budget Truck is in the business of local and one-way truck rentals through a network of dealer and company owned locations. (Budget's S.M.F. ¶ 1.) Budget Truck serves the consumer and light commercial sectors of the truck rental market. (*Id.* at ¶ 2.) In 2011, Option Rentals was a "rent-to-own" business for appliances, electronics, bedding and furniture. (*Id.* at ¶ 4.) Douglas Wiggins was the proprietor of Option Rentals. (*Id.* at ¶ 5.) Option Rentals had a contract with Budget Truck for the rental of vehicles to consumers. (*Id.* at ¶ 6.) Before dealers are fully established to rent vehicles to customers, they must engage in extensive training through Avis Budget Group University. (*See* Exhibit M to Budget's S.M.F., Deposition of Michael J. Guide ("Guide Dep."), 16-23.) Option Rentals also served as a vendor for the transfer of Budget Truck vehicles and equipment to and from various Budget rental locations in northern New England. (Budget's S.M.F. ¶ 7.) There was no written contract between Mr. Wiggins or Option Rentals and Budget Truck for the transfer work. (*Id.* at ¶ 8.)

Budget Truck employed territory performance managers who monitored Option Rentals. (Pls.' A.S.M.F. ¶ 135.) A territory performance manager would travel to Option Rentals on a regular basis to ensure that Option Rentals was properly performing the rental procedures required by Budget Truck. (*Id.* at ¶ 136.) The territory performance manager would also engage in auditing Option Rentals to make sure the rental process to

extended to cover co-defendants who do not wish to oppose a motion for summary judgment that is not seeking judgment against the other.

3

customers was compliant with Budget Truck's procedures and to confirm what vehicles and equipment were onsite at Option Rentals. (*Id.* at ¶ 137.) Michael J. Guide testified that as a territory performance manager overseeing Budget Truck's rental of vehicles to consumers, his involvement with the transfer vendor business of Budget Truck was as follows:

> Like I said, I would get involved if a dealer would call me because they couldn't get ahold of inventory management, they'd need me to get involved and to call inventory management myself. And if I couldn't get ahold of inventory management, this happens quite often, I'd have to call a supervisor, i.e., Susan Mulligan, and get her involved to make sure that something is done about it.

(Guide Dep., 34.) To illustrate his involvement, Mr. Guide further explained:

> So it's a broad term, "involvement." Like when we're busy at the end of August, let's say, just past, all the trucks are moved down from Maine to Boston, and those would have all fell into my territory, all those Maine dealers. We we'd give up all these trucks to go to Boston. So I would help facilitate that with inventory management just meaning making sure the dealers were on board: "Hey, inventory management is going to be calling you. You need to make sure you give them the trucks that they're asking for.

(*Id.* at 35.) In other words, Mr. Guide's involvement with respect to the busy time was to make dealers know that they had to cooperate in the transfer of trucks to accommodate the "crush of business at the end of August." (*Id.*)

Mr. Guide also testified that he had conversations with Mr. Wiggins in connection with the transfer of vehicles from dealer to dealer. (*Id.* at 45.) In these conversations, Mr. Guide helped to facilitate information between the dealers regarding the movement of the vehicles. (*Id.*) While Mr. Guide would occasionally communicate this information between dealers, he testified that he did not know the details of how the transfers were being made. (*Id.* at 46.) More specifically, he did not know if a Budget Truck or some

4

other vehicle was being used as the chase vehicle to bring the transfer driver back from his destination. (*Id.*)

As a territory performance manager, Mr. Guide testified that he would receive dealer transfer paperwork whenever a dealer moved a vehicle from one location to another. (*Id.* at 39.) The paperwork constituted a record of the truck at issue being moved. (*Id.*)

Budget Truck also employed Inventory Managers who were responsible for recognizing a need for a Budget Truck vehicle at certain locations and coordinating the movement of said vehicles to satisfy the need. (Pls.' A.S.M.F. ¶ 146.) Inventory Managers could rely on their own rental agents, transfer vendors, or "hikers" to move these vehicles. (Exhibit L to Pls.' A.S.M.F., Deposition of Susan Mulligan ("Mulligan Dep."), 7-9.) Ms. Mulligan, a Supervisor of Inventory Managers for Avis Budget, testified that a vendor is "somebody that moves trucks for us and gets paid per mile to move the truck." (*Id.* at 9.) The difference between a vendor and a hiker, according to Ms. Mulligan, is that hikers are Budget employees who are paid the same way Ms. Mulligan is by Avis Budget, and "also the hikers are our employees, so they take direction, we can give them direction immediately...." (*Id.*) When an Inventory Manager recognizes a need to transfer Budget vehicles, a vendor is contacted and provided with information including "the transfer control ID number, the starting dealer, the ending dealer and the due date of the move...the unit number that they're moving, how many miles it's going and the payment." (Pls.' A.S.M.F. ¶ 147.) In addition, the Inventory Manager either confirms or denies the paid use of a chase vehicle by the vendor. (*Id.* at ¶ 148.) A chase vehicle is the vehicle the drivers initially ride in to perform a transfer. (*Id.*

5

at ¶ 157.) The driver of the chase vehicle would drop the other drivers off at the location where the Budget Truck vehicles were located and would follow the drivers to the location where the vehicles were to be dropped off. (*Id.* at ¶ 158.) Then, the chase vehicle would transport the drivers back to their point of origin, such as Option Rentals. (*Id.*)

B.  Mr. Kay's Relationship with Option Rentals

Mr. Kay frequented Option Rentals to socialize and run minor errands. (Budget's S.M.F. ¶ 9.) These tasks included: 1) driving vehicles to customer's houses to make deliveries of products; 2) taking vehicles to garages for maintenance; 3) delivering furniture to those who rented it; 4) occasionally collecting furniture from those who had not paid; travelling to customer's homes to collect money owed to Option Rentals; and 5) transporting Budget Truck vehicles. (Pls.' A.S.M.F. ¶¶ 152-155.) Mr. Kay did not have a contract with Option Rentals. (Budget's S.M.F. ¶ 13.)

Mr. Kay's son, Joshua Henderson, testified that Mr. Kay and Mr. Wiggins were "the best of friends." (Exhibit D to Budget's S.M.F., Deposition of Joshua Henderson ("J. Henderson Dep."), 44.) Lisa Robbins-LaChance, a former worker at Option Rentals, testified that Messrs. Kay and Wiggins were "hostile buddies" and that they often would "sit and have coffee and...chitchat about whatever in Doug's office and such, you know, do favors for each other, what not." (Exhibit D to Pl.'s A.S.M.F., Deposition of Lisa Robbins-LaChance ("LaChance Dep."), 74-75.)

The estate of Douglas Wiggins asserted in an interrogatory response that Mr. Kay was an independent contractor. (Exhibit C to Budget's S.M.F., 3.) In addition, Daniel Murray, the police officer who investigated the accident, testified that in his conversation with Mr. Wiggins on the day of the accident, Mr. Wiggins emphasized that Mr. Kay was

6

an independent contractor. (Exhibit G to Budget's S.M.F., Deposition of Daniel Murray ("Murray Dep."), 37-38.)

On the other hand, Lisa Robbins LaChance testified that Mr. Wiggins was the boss of Mr. Kay. (LaChance Dep., 75.) In addition, Stacey Henderson, Mr. Kay's daughter, testified that she understood Mr. Wiggins was the boss at Option Rentals and was employed by Budget. (Ex. A to Pl.'s O.S.M.F., Deposition of Stacey Henderson ("S. Henderson Dep."), 57-58.) Furthermore, Mr. Wiggins told Mr. Kay on a number of occasions that he was Mr. Kay's boss. (Pls.' A.S.M.F. ¶ 150.)

### C. Option Rentals' Work as a Transfer Vendor

Budget Truck Inventory Management personnel would provide Mr. Wiggins/Option Rentals with specific information about transfers. (*Id.* at ¶ 16.) Namely, control numbers for the transfer, vehicle unit numbers and locations, and the receiving dealer or destination of the vehicles. (*Id.*) In addition, if the transfer was carried out to fulfill a reservation, Budget Truck would provide a time frame within which it wanted the transfer completed. (Mulligan Dep., 12.) As part of a request for the transfer of a vehicle by Inventory Management, Mr. Wiggins/Option Rentals was asked to drive a particular vehicle from one location to another location. (Budget's S.M.F. ¶ 17.)

Mr. Wiggins/Option Rentals' duties as a transfer vendor included receipt of information concerning vehicles that needed to be moved and confirmation by Option Rentals that it could accomplish the task. (Budget's S.M.F. ¶ 19.) Mr. Wiggins/Option Rentals would be responsible for making arrangements for the necessary personnel to accomplish any particular transfer. (*Id.* at ¶ 20.) Transfer vendors were expected to use

7

chase vehicles if transportation or additional drivers were needed for particular transfers. (*Id.* at ¶ 21.)

The typical procedure was for Budget Truck to call Option Rentals and speak with Mr. Wiggins. (*Id.* at ¶ 22.) Transfer request emails then came from Budget Truck Inventory Manager Justin Merten to Mr. Wiggins and Option Rentals via the following email address: wiggy@roadrunner.com. (*Id.* at ¶ 23.) Such emails were typically preceded by a phone call between Messrs. Merten and Wiggins. (*Id.* at ¶ 24.) The "wiggy" address was used exclusively for Budget transfers and was personal to Mr. Wiggins. (*Id.* at ¶¶ 25-26.) The Option Rentals rent to own business had its own email address. (*Id.* at ¶ 27.)

Budget Truck only made payments to Option Rentals for all transfers it requested from Option Rentals. (*Id.* at ¶ 28.) Budget Truck paid Mr. Wiggins/Option Rentals $1.05 per mile, one way, to transfer vehicles. (*Id.* at ¶ 29; Pls.' A.S.M.F. ¶ 160.) Option Rentals, in turn, paid its workers who performed the transfers $0.13 per mile. (Pls.' A.S.M.F. ¶ 161.) The transfer would close once the receiving dealer transmitted information that the transferred vehicle had arrived. (Budget's S.M.F., ¶ 30.) This closure would trigger the payment of the one-way mileage to the transfer vendor, in this case Mr. Wiggins/Option Rentals. (*Id.* at ¶ 31.) Mr. Wiggins/Option Rentals could also transmit for payment any additional documentation to Budget Truck, such as tolls and gas receipts, if applicable to any particular transfer. (*Id.* at ¶ 32.)

Budget Truck worked directly with Mr. Wiggins in the transfer aspect of the business. (*Id.* at ¶ 33.) Budget Truck paid Mr. Wiggins/Option Rentals by check. (Budget's S.M.F. ¶ 36.) ,The Budget Truck transfer assignments were directed to Option

8

Rentals, not Mr. Kay. (*Id.* at ¶ 37.) Mr. Wiggins/Option Rentals received the transfer requests from Budget Truck and passed on the information to Mr. Kay. (*Id.* at ¶ 38; Pls.' O.S.M.F. ¶ 38.)

### D. Option Rentals' Transfer Relationship with Mr. Kay

Mr. Kay started receiving pay from Mr. Wiggins/Option Rentals in 2009 for "transfer" of Budget Truck vehicles. (Budget's S.M.F. ¶ 39.) Joshua Henderson had done the chase work for several months in 2009 before he left his formal employment at Option Rentals. (*Id.* at ¶ 40.) Joshua told Mr. Kay that "I talked with Doug and we got a nice job for you. It's perfect...it pays under the table." (*Id.* at ¶ 41.) Mr. Wiggins would tell Mr. Kay which vehicles needed to be transferred and where they needed to be transferred. (Pls.' A.S.M.F. ¶ 163.) From 2008 to 2011, Mr. Kay was told by Mr. Wiggins to perform Budget Truck transfers from three to four times per week or more. (*Id.* at ¶ 164.) Mr. Wiggins only allowed one chase vehicle per trip. (*Id.* at ¶ 165.)

The estate of Mr. Wiggins explained that "[s]ometimes, Dennis Kay did ask [Mr. Wiggins] to obtain directions and maps from the internet since [Mr. Kay] did not have readily available internet access." (Exhibit C to Budget's S.M.F., Estate of Mr. Wiggins' Answers to Plaintiffs' Interrogatories, Ans. 17.) Option Rentals Store Manager Kim McGruder confirmed that she was the person often tasked with printing out specific directions for Mr. Kay to travel. (Exhibit H to Budget's S.M.F., Deposition of Kimberly McGruder ("McGruder Dep."), 44.) On the other hand, Stacey Henderson testified that Mr. Wiggins would provide his drivers "Mapquest and a GPS," but would not "tell you the route that you had to follow to get there." (S. Henderson, Dep., 27.) Ms. McGruder testified that while Mr. Kay was carrying out transfers, Mr. Wiggins would ask her to

9

"check in with [Mr. Kay] while en route so [Mr. Wiggins] could know where [Mr. Kay] was." (McGruder Dep., 44.)

Mr. Wiggins would send out Mr. Kay and his team to chase Budget Truck vehicles providing them "mapquest" locations and lists of truck members. (Budget's S.M.F. ¶ 44.) Mr. Wiggins did not provide weather reports to Mr. Kay. (*Id.* at ¶ 45.) Mr. Kay would watch the weather forecast closely or ask people about the weather forecasts because he drove so much. (*Id.* at ¶ 46.) Stacey Henderson, testified that Mr. Wiggins would sometimes provide a time frame for when he wanted things done, but "most of the time, it was just go get it done." (S. Henderson Dep., 28.) She also testified that Mr. Wiggins would often provide his drivers with the location and number of the truck that they were supposed to pick up and directions from map quest. (*Id.* at 27.) Ms. Henderson further stated that she had called Mr. Wiggins in the past if she had an issue finding the truck and Mr. Wiggins would tell her to "figure it out yourself...." (*Id.*)

The duties Mr. Kay performed as a transfer driver were generally at the direction of Mr. Wiggins/Option Rentals. (Budget's S.M.F. ¶ 49.) As discussed *supra* section I.A, Mr. Guide, testified that when things were quite busy, Budget Truck would often find out where the drivers were help make sure things went smoothly. (*See* Guide Dep., 35, 57.)

Mr. Wiggins was very controlling of the Budget Truck transfer business at Option Rentals. (Budget's S.M.F. ¶ 50.) Mr. Wiggins would regularly tell Ms. LaChance, in relation to the transfer business, to "mind your own business," "keep out of it," "don't get involved," and "get you're a__ back to your office." (*Id.* at ¶ 51.) If Budget Truck called asking questions, Ms. LaChance was instructed to "be dumb" and refer calls to Mr. Wiggins. (*Id.* at ¶ 52.) Ms. LaChance understood what went on with Budget Truck

10

transfers because she was present at Option Rentals every day and on two occasions she paid the drivers using envelopes Mr. Wiggins left. (*Id.* at ¶ 53.) The drivers were required by Mr. Wiggins/Option Rentals to sign "petty cash" slips. (*Id.* at ¶ 54.) Mr. Wiggins told drivers that he would take care of the IRS. (*Id.* at ¶ 55.) Mr. Wiggins was advised by his bookkeeper, Terry Turcotte, that she'd be more comfortable paying Mr. Kay or others by check. (*Id.* at ¶ 56.) Ms. Turcotte testified, however, that Mr. Wiggins did not want to pay Mr. Kay in checks because Mr. Kay did not have a bank account and wanted cash. (*Id.* at ¶ 57; Ex. I to Budget's S.M.F., Deposition of Terry Turcotte ("Turcotte Dep."), 66.)

Mr. Kay was reimbursed for mileage for each transfer job. (Budget's S.M.F. ¶ 58.) Mr. Kay was provided an advance for gas and tolls. (*Id.* at ¶ 59.) Upon completion of the job, Mr. Kay would complete mileage paperwork, provide receipts for gas and tolls, copies of which were submitted to Mr. Wiggins, who then submitted the paperwork to Budget Truck for payment. (*Id.* at ¶ 60.) Mr. Wiggins paid Mr. Kay out of Option Rentals' petty cash account upon completion of a job instead of waiting for payment from Budget Truck. (*Id.* at ¶ 61.) Mr. Kay never received a W-2 or 1099 form from Mr. Wiggins/Option Rentals. (*Id.* at ¶ 62.)

Stacey Henderson testified that Mr. Wiggins would tell Mr. Kay there were a certain number of vehicles that had to be moved during a certain time frame and then Mr. Kay could pick out as many drivers as he needed. (S. Henderson Dep., 32.) She testified that Mr. Wiggins did not control who Mr. Kay picked for drivers. (*Id.*) Ms. McGruder testified, however, that if multiple Budget Truck rental vehicles needed to be driven to various locations, Mr. Wiggins would permit Mr. Kay to ask other drivers to assist him and specify how many people Mr. Kay could ask for assistance. (McGruder Dep., 39.) In

11

addition, Ms. LaChance testified that to the best of her knowledge Mr. Kay and Mr. Wiggins would find drivers, "set it up, where, when, etc." (LaChance Dep., 29.)

Joshua Henderson testified that the individuals who performed the runs for Mr. Wiggins/Option Rentals were friends and family so Mr. Wiggins knew them. (J. Henderson Dep., 24.) On occasion Mr. Wiggins would put cash into an envelope and have Mr. Kay distribute the cash to the other drivers. (McGruder Dep., 40.) Joshua Henderson further testified that he had no reason to believe Mr. Kay was an "employee" of Option Rentals. (Budget's S.M.F. ¶ 67.) Thomas Bourque, a driver for Option Rentals and one of the passengers injured in the crash that killed Mr. Kay, testified that as a driver for Mr. Kay he believed he was an independent contractor. (Id. at ¶ 68.) Mr. Bourque further testified that he did not think Mr. Kay would refuse to carry out a run for Mr. Wiggins because it was hard for Mr. Kay to say no to the money. (Deposition of Thomas Bourque ("Bourque Dep."). 39.) Robert Maskell, who knew Mr. Kay through his work as a transfer driver, testified that Mr. Kay would make jokes about how he worked for himself and would say he wasn't doing certain things because he worked for himself. (Deposition of Robert A. Maskell ("Maskell Dep."), 9, 12.)

### E. Budget Truck's Relationship with Mr. Kay

Budget Truck asserts that it did not supervise, provide instructions to, compensate, or reimburse Mr. Kay. (Ex. A to Budget's S.M.F., Budget Truck's Answer to Interrogatories, 5, 7, 12.) There was, however, occasional contact between Mr. Kay and Budget Truck personnel regarding picking up, moving, and estimated times of arrivals for the transfer of Budget Truck vehicles. (Bourque Dep., 40; Guide Dep., 45-46, 57.) Budget Truck did not directly pay, compensate, or reimburse Mr. Kay. (Budget's S.M.F.

¶ 73.) Instead, Mr. Wiggins paid cash to Mr. Kay after completing a Budget Truck transfer and subsequently, Mr. Wiggins would receive compensation from Budget Truck. (Turcotte Dep., 21-22, 27.)

There was "occasional" contact between Mr. Kay and Budget Truck personnel. (Budget's S.M.F. ¶ 74.) For example, Mr. Guide, testified that he spoke with Mr. Kay approximately three times in his career. (Guide Dep., 57.) The conversations arose during busy times of the year when Mr. Guide would reach out to drivers, like Mr. Kay, to:

> find out where these guys were to facilitate or to help them to make sure we were set up when they were picking stuff up or when they were dropping things off, making sure they were dropping them off in the right place.

(*Id.*) Mr. Guide described the conversations he would have with drivers like Mr. Kay as follows:

> In the conversation I'm sure he would tell me, "I'm going from here to here," when I asked, "How long before you get there?" "I just left here, and I'm going here, and I won't be there until three hours." So I'm sure that was part of the conversation. What I actually remember about [conversations with Mr. Kay], I couldn't tell you.

(*Id.* at 58.) Mr. Guide further testified that:

> I know periodically, like I said, if I needed to get an update, I would try to [reach a driver working for Option Rentals], if I had the phone number. It wasn't often I had the phone number of the gentlemen whomever was driving these vehicles. It was only at that busy time when they were on the ground, let's say, in Boston that I would actually have that information, and I'd only utilize it at that specific time. Other than that during the year, it was not something – it was not something that was done...It was only that busy specific time when we were coordinating hundreds of trucks, just to see when they were going to arrive. It's only one location, it was only for one location. 200-plus trucks come into that location, and we would be trying to see where the transfer vendors were so we could set up the trucks to move out because we had limited parking....

13

(*Id.* at 59-60.) In other words, the conversations were about which trucks to get and where to go when Mr. Wiggins was unavailable. (Budget's S.M.F. ¶ 76.) Mr. Bourque, testified that he only heard one such conversation personally a few months before the accident. (*Id.* at ¶ 77.)

Budget Truck did not direct chasers without the knowledge of Mr. Wiggins/Option Rentals. (*Id.* at ¶ 78.) Ms. McGruder did not know Budget Truck to contact Mr. Kay directly to request a vehicle transfer. (*Id.* at ¶ 79.)

### F. The December 29, 2011 Trip

On a December 29-30, 2011 trip involving multiple sites and vehicles, one of the drivers accidentally took a key from Hendricks, a Budget dealer in Rockport, Maine, to another Budget Truck vehicle. (Budget's S.M.F. ¶ 80.) The extra key was discovered later in the morning and a phone call to Mr. Wiggins was made to see what he wanted the group to do. (*Id.* at ¶ 81.) Mr. Wiggins determined that the key had to be taken back to Hendrick's. (*Id.* at ¶ 82.) On December 30, 2011, a phone call between Mr. Wiggins and Mr. Kay occurred at about 8:00 a.m. before the December 29, 2011 run ended. (*Id.* at ¶ 83.) Mr. Wiggins' voice was heard over the cell phone speaker. (*Id.* at ¶ 84.) Mr. Wiggins told Mr. Kay that he had to "finish the run if he wanted his f___ing money." (*Id.* at ¶ 85.) Stacey Henderson believed Mr. Kay was going to do the run to Hendrick's later in the day on December 30, 2011. (*Id.* at ¶ 86.)

Stacey Henderson testified that on December 30, 2011, the weather was fine. (S. Henderson Dep., 68.) Ms. McGruder testified, however, that Mr. Kay told Mr. Wiggins he did not want to perform the run on December 30, 2011 because the weather was bad. (McGruder Dep., 50-51.) In response, Mr. Wiggins allegedly told Mr. Kay that he would

14

have to perform the transfer "first thing in the morning [on the following day]." (*Id.* at 50.) There was no contact between anyone at Budget Truck and Mr. Kay on December 30 or 31, 2011. (Budget's S.M.F ¶ 89.)

### G. The December 31, 2011 Accident

Donna Henderson, the mother of Mr. Bourque, testified that on December 30, 2011, Mr. Kay stated that Mr. Wiggins "had told him that nobody that had pay coming to them could get paid until he went and did" the December 31, 2011 run. (Exhibit N to Budget's S.M.F., Deposition of Donna J. Henderson ("D. Henderson Dep."), 14-16.) Mr. Bourque, however, testified that he "wasn't aware of any time [the run] had to be done by" and that as far as he knew, "it could have been done on January 1 or January 2...." (Bourque Dep., 44.)

Mr. Kay spent the night of December 30, 2011 at the trailer of his adult grandchild, Carlton Norwood, and both men left sometime before 7:00 a.m. to carry out the run. (Budget's S.M.F. ¶ 92.) Stacey Henderson testified that Mr. Bourque informed her, when Mr. Kay went to pick him up to carry out the run, that "the road conditions were fine. There was no ice on the roads because he was waiting on the road for my father to pick him up in Gardiner." (S. Henderson Dep., 61-62.) Mr. Bourque stated that when he was waiting outside to be picked up, the weather was raining and kind of chilly, but not freezing. (Bourque Dep., 18.) Mr. Bourque testified that he and Mr. Kay talked about the weather during their run and Mr. Kay "kind of talked about as long as it stays like this, everything will go fine." (*Id.* at 13.)

Joshua Henderson talked with Mr. Kay approximately an hour before the accident at approximately 7:00 a.m. (Budget's S.M.F. ¶ 94.) Joshua understood Mr. Kay had

15

arrived at Option Rentals at the time of their conversation. (*Id.* at ¶ 95.) Joshua Henderson further testified that shortly before the accident, Mr. Kay told him over the phone that he was coming over that day "but I have to do this f___ing Budget run because Doug [Wiggins] will not give me my pay until I do it..." (J. Henderson Dep., 40.) Joshua told Mr. Kay to be careful because there was bad weather coming. (Budget's S.M.F. ¶ 97.) Joshua had heard there was snow coming later in the day. (*Id.* at ¶ 98.) In his telephone call with Joshua, Mr. Kay described the roads as wet, but warm. (J. Henderson Dep., 41.) As the two were talking, Joshua looked at a bank clock nearby and noted the temperature was 40 degrees. (*Id.*)

Mr. Bourque testified that he did not hear Mr. Kay speak with anyone from Budget Truck on the day of the accident. (Budget's S.M.F. ¶ 101.) Mr. Bourque entered the van driven by Mr. Kay in the cargo area where he sat in a lawn chair. (*Id.* at ¶ 103.) Mr. Kay knew Mr. Bourque had a suspended license, but was not concerned about it. (*Id.* at ¶ 104.) Mr. Bourque's license had been suspended in 2006 and never reinstated. (*Id.* at ¶ 105.) Mr. Bourque was never asked for a driver's license by Mr. Wiggins or anyone at Option Rentals. (*Id.* at ¶ 106.) Messrs. Kay, Bourque, and Norwood went from Bourque's home to Ainslie's Market in Gardiner. (*Id.* at ¶ 107.) On the trip to Ainslie's Market, Mr. Bourque testified that he overheard Mr. Kay talking with a female he identified as being from Option Rentals. (*Id.* at ¶ 108.) Mr. Bourque was the only one to leave the van at Ainslie's. (*Id.* at ¶ 109.)

Joshua Henderson testified that at 8:00 a.m. he was told to go outside at his workplace and place salt because the temperature "just dropped dramatically[.]" (J. Henderson Dep., 41.) Joshua described the weather change as "like a SciFi movie. It was

16

like a flash froze [sic]...." (*Id.*) When he went out to salt, Josh testified that the ground was "glazed over, really iced, yes, and it was very, very cold...." (*Id.* at 42.) The co-worker who asked Joshua to go outside and salt "was standing outside smoking a cigarette" and stated "isn't it f___ weird?" to which Joshua responded "real weird it seems. It was just warm out a few seconds ago." (*Id.*)

Official weather records from the National Oceanic and Atmospheric Administration ("NOAA") indicate that the high temperature in the City of Gardiner, Maine on December 31, 2011 was below freezing at 27 degrees Fahrenheit. (Exhibit J to Pls.' A.S.M.F., NOAA Records.) That same day, NOAA records indicate the high temperate in the City of Augusta was 33 degrees Fahrenheit, with a low of 24 degrees and 0.16 inches of precipitation that day. (*Id.*)

The accident occurred approximately 1½-2 miles from Ainslie's. (Budget's S.M.F. ¶ 114.) Mr. Bourque believes Mr. Kay was driving about 50 mph on a road with a speed limit of 55 mph. (*Id.* at ¶ 115.) Mr. Bourque testified that he could feel the truck sliding across the road and that the only thing said inside the van before the impact was Carlton Norwood stating "oh shi___." (*Id.* at ¶¶ 116, 117.) Mr. Bourque testified that he may have told Stacey Henderson that the temperature dropped 20 degrees in the ten minutes he was at Ainslie's Market and that he believes he told Joshua Henderson that the roads were fine and then the next minute, the roads were just – everything happened so fast." (Bourque Dep., 51-52.)[4]

---

[4] Stacey Henderson also testified that Mr. Bourque stated the group was at Ainslie's Market and it "was like the weather dropped 20 degrees instantly." (S. Henderson Dep., 64.)

17

## H. Post Accident Investigation

The investigating Gardiner Police Officer, Daniel S. Murray, described the roads as "frozen" at the time of the accident. (Budget's S.M.F. ¶ 120.) Officer Murray testified that on his ride from downtown Gardiner to the accident scene, the "roads went from wet to frozen very, very quickly and this was between Ainslie's and the accident scene." (Murray Dep., 14-15.) Officer Murray testified that approximately 500 yards from the accident scene, he could feel his vehicle start to slide underneath him and, as a result, called Officer Eric Testerman on the radio to tell him to watch himself coming in. (*Id.* at 41.) Officer Murray testified that based on the rain and the conditions in the town of Gardiner, the road conditions at the scene of the accept "were in some respects unexpected." (*Id.* at 26-27.)[5] He also described having difficulty walking from the accident scene to his police vehicle. (Budget's S.M.F. ¶ 124.)

Trooper Christopher Rogers was called to the scene by the Gardiner Police Department. (*Id.* at ¶ 125.) The conditions were so bad that Trooper Rogers had the rear end of his car spin out. (*Id.* at ¶ 126.) Trooper Rogers, an accident reconstructionist, stated that his theory about how the accident occurred was a combination of "[i]cy roads and a vehicle traveling too fast for those conditions." (Deposition of Trooper Rogers ("Rogers Dep."), 16-17.) He explained, however, that he wasn't able to determine how fast the van was going at the time of the accident, but estimated it would not have been going much faster than the posited speed limit of 55 mph. (*Id.* at 17.) In his opinion, a speed of 55 miles per hour was too fast for the icy roads, but acknowledged that "it is

---

[5] In addition, Joshua Henderson testified that neither he nor Mr. Kay knew bad weather was coming in the day of the accident. (J. Henderson Dep., 53-54.)

18

difficult with icy roads because a half mile back, they may not be icy so it may be fine there...." (*Id.*)

Trooper Rogers also opined that neither Mr. Kay nor Mr. Norwood were wearing seatbelts. (*Id.* at 15.) Messrs. Kay and Norwood died at the scene of the accident due to injuries they received in the accident. (Budget's S.M.F. ¶ 130.)

## I. Mr. Wiggins' Post Accident Statements

Ms. McGruder testified that during the first week of January 2012, Mr. Wiggins stated that if it were up to him, he would not have sent Mr. Kay out on the morning of December 31 because the weather conditions were too dangerous. (McGruder Dep., 62.) Ms. McGruder also testified, however, that Mr. Wiggins never stated that he knew the weather was going to be dangerous in advance of December 31. (*Id.* at 63.)

Similarly, Mr. Maskell stated that he spoke with Mr. Wiggins after the accident and Mr. Wiggins expressed concern that Mr. Kay's family was going to sue him. (Maskell Dep., 15.) Mr. Wiggins allegedly stated that Mr. Kay's family should sue Budget Truck instead of him because Budget Truck actually told Mr. Kay were to go on the trip. (*Id.*) Mr. Wiggins also allegedly told Mr. Maskell that he did not know about the vehicle transfer on December 31 and that he would not have had Mr. Kay do the trip. (*Id.* at 15-16.) Mr. Wiggins further allegedly stated that "he came from – his house is north of there and he said it was pretty slippery coming in and that it was patchy and that he wouldn't have sent them out." (*Id.* at 21.) Mr. Maskell testified that in his opinion, Mr. Kay would not have gone out if the weather was questionable because "[i]t's kind of one of those relationships where if it was slippery and Dennis felt like he didn't want to go, he would not go." (*Id.* at 21.)

## II. Discussion

"To survive a defendant's motion for a summary judgment, the plaintiff[s] must establish a prima facie case for each element of [their] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements [of material fact] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact. *North East Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 773. In addition to the specific facts set forth by the parties, the court will also draw any reasonable inferences that a fact finder could draw from the given facts. *Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18. Those inferences will be drawn in favor of the non-moving party. *Id.* When facts or reasonable inferences are in dispute on a material point, the court will not enter summary judgment. *Id.*

At the same time, summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, no reasonable juror could find for the non-moving party. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶14 n.3, 48 A.3d 774 (quoting *Scott v. Harris*, 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue…if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.*, 2008

20

ME 106, ¶ 14, 951 A.2d 821 (quoting *Vives v. Fajardo*, 472 F.3d 19, 21 (1st Cir. 2007));

*Bouchard v. American Orthodontics*, 661 A.2d 1143, 1144-45 (Me. 1995) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted").

Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury

verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of

Maine System*, 2001 ME 96, ¶ 6, 773 A.2d 1045.

### A. Whether Plaintiffs have Established a Prima Facie Case that Mr. Wiggins, and Vicariously Budget Truck, Owed Mr. Kay a Duty of Care

Budget Truck argues that even if it is vicariously liable for the actions of Mr.

Wiggins, summary judgment is warranted because Mr. Wiggins did not have notice of

the allegedly dangerous condition that caused Mr. Kay's accident. In particular, Budget

Truck alleges that the dangerous road conditions stemmed from a flash freeze, which was

a "sudden, localized event that occurred outside of the City of Gardiner beyond Ainslie's

Market." Budget Truck also asserts, by adopting Ms. Springmann's argument in support

of her motion for summary judgment on this issue, that there is no evidence Mr. Wiggins

had any knowledge of the "freak" weather event. In conjunction with this argument,

Budget Truck points out that under Maine law, "an individual's common law duty will

extend only so far in negligence actions related to winter weather...." *Davis v. R C &

Sons, Paving, Inc.*, 2011 ME 88, ¶ 21 n.5, 26 A.3d 787 (quoting *Alexander v. Mitchell*,

2007 ME 108, ¶ 19, 930 A.2d 1016):

Plaintiffs respond that Mr. Wiggins—and vicariously Budget Truck—owed Mr.

Kay a legal duty to provide a reasonably safe work environment. They argue that Mr.

Wiggins breached this duty by not exercising reasonable care in arranging the Budget

21

Truck transfer that resulted in Mr. Kay's passing. In particular, they argue that Mr. Wiggins gave Mr. Kay a specific order, the order failed to provide a reasonably safe method of performing the task, and the order exposed Mr. Kay and his passengers to a reasonably foreseeable risk of serious injury.

Plaintiffs further argue that Mr. Wiggins was placed on notice of the dangerous weather conditions through Mr. Kay voicing his concerns about a winter storm. They contend that despite this knowledge, Mr. Wiggins ordered Mr. Kay to perform the transfer. They further imply that Mr. Kay was coerced into performing the transfer because of Mr. Wiggins' practice of withholding wages earned by drivers until they completed additional truck transfers.

In order to survive summary judgment on an action alleging negligence, the Plaintiffs must establish a prima facie case, which involves a duty on the part of the defendant towards the plaintiffs. *Mastriano v. Blyer*, 2001 ME 134, ¶ 10, 779 A.2d 951. This "requires a plaintiff to establish four elements: duty, breach, causation, and damages." *Id.* In other words, Plaintiffs must show a duty owed, breach of that duty, and an injury that is proximately caused by the breach of duty. *Id.* (quotation omitted).

"Whether one party owes a duty of care to another is a matter of law." *Fish v. Paul*, 574 A.2d 1365, 1366 (Me. 1990). Duty and liability are determined by the existence of actual or constructive knowledge. *Milliken v. Lewiston*, 580 A.2d 151, 152 (Me. 1990). As a result, a party has no duty where it lacks both actual and constructive notice. *See id.*

Generally, an employer owes an employee a duty to exercise reasonable care in providing a reasonably safe workplace. *Marcoux v. Parker Hannifin/Nichols Portland*

22

*Division*, 2005 ME 107, ¶ 23 n.4, 881 A.2d 1138 (citing *Wilson v. Gordon*, 354 A.2d 398, 401 n.6 (Me. 1976) ("Failure by an employer to exercise reasonable care to provide a reasonably safe and suitable place for his employee to work in, or reasonably safe and suitable appliances with which to do the work, not so obvious that an ordinarily prudent person, mindfully going about work with his eyes open, would observe and appreciate them, is negligence"). Expounding on this duty, the Law Court in *Wilson v. Gordon* affirmed a jury's finding that an employer breached his duty of care to an employee by failing to provide a reasonably safe method to enter and exit the premises of a customer. 354 A.2d 398, 399-401 (Me. 1976). In that case, the employer supplied an employee with a list of customers whose oil burners required servicing. *Id.* at 399. For purposes of appellate review, the Law Court assumed that the employer knew the customer was a summer resident and would not be home. *Id.* The employee asked his employer how to gain access to this customer's house and was instructed to enter and exit through a window. *Id.* The employee entered through the window, serviced the oil burner, and prepared to leave through the same window. *Id.* As the employee attempted to jump onto the window ledge, he struck his head on a beam above the window and was injured. *Id.* A jury found the employer liable to the employee for negligence and the trial court denied the employer's motion for a directed verdict and motion for new trial. *Id.*

The Law Court affirmed explaining that "[e]ven though the employer had no direct control [over the customer's] premises, he was under a legal duty to exercise reasonable care to arrange with the owner of the premises for a reasonably safe means of entrance to the premises and exit from the premises by the employee." *Id.* at 400. Based on that duty, the court concluded that it "was proper for the jury to conclude that the

employer had not exercised reasonable care in making an arrangement with [the customer] for the employee to enter the premises by a reasonably safe method." *Id.* at 400-01.

Although not raised by the parties, *Wilson* indicates that Mr. Wiggins' duty of care to Mr. Kay may be impacted by Mr. Kay's contractual assumption of the risk. *Id.* at 402-03. Maine's passage of the comparative negligence statute, 14 M.R.S. § 156, abolished the doctrine of "voluntary assumption of the risk," but *Wilson* explained that contractual assumption of the risk was not inconsistent with said statute. *Id.* at 401-02.[6] Contractual assumption of the risk was defined and explained as follows:

> Dangerous work must be performed; and work must be done in dangerous places; and when a workman makes a contract to do such work, or to work in a dangerous place, he contracts with reference to that danger and assumes the open and obvious risks incident to the work, or, as sometimes express, such dangers as are normally and necessarily incident to the occupation.

*Id.* at 401 (quoting *Morey v. Maine Cent. R. R. Co.*, 125 Me. 272, 274, 133 A. 92, 93 (1926)).[7]

---

[6] Since *Wilson*, the Law Court has twice affirmed that voluntary, but not contractual, assumption of the risk is no longer recognized in Maine separate from contributory negligence. *Merrill v. Sugarloaf Mt. Corp.*, 2000 ME 16, ¶ 9, n.3, 745 A.2d 378; *Baker v. Mid Maine Medical Center*, 499 A.2d 464, 469 (Me. 1985).

[7] The abolished doctrine of voluntary assumption of the risk was defined as:
> Failure by an employer to exercise reasonable care to provide a reasonably safe and suitable place for his employee to work in, or reasonably safe and suitable appliances with which to do the work, not so obvious that an ordinarily prudent person, mindfully going about work with his eyes open, would observe and appreciate them, is negligence. But a defendant may avoid the consequences of this negligence by showing that the plaintiff, with full knowledge and fully aware and without objection, and without the promise that the defect will be remedied, continued in the service in disregard of the failure to provide, and continuing assumed the risk.

*Id.* at 401 n. 6 (quoting *Hatch v. Portland Terminal Co.*, 125 Me. 96, 100, 131 A. 5, 8 (1925)).

24

In *Foster v. Atwood*, the Knox County Superior Court discussed contractual assumption of the risk as one of the underlying rationales supporting the purported rule that firefighters and police officers cannot recover in tort when their injury is caused by the conduct that required their official presence. 1995 Me. Super. LEXIS 192, *3-*6 (May 25, 1995). *Foster* explained that "[c]ontractual assumption of risk ordinarily applies as a defense in an action between parties to the contract, must notably in the employer /employee context." *Id.* at *5. It also opined, however, that this assumption of the risk "is not really an affirmative defense; rather it indicates that the defendant did not even owe the plaintiff any duty of care." *Id.* at *5-*6 (quoting *England v. Tasker*, 529 A.2d 938, 940 (N.H. 1987)).[8] If this were the law in Maine, an argument could be made that in order to determine the scope of Mr. Wiggins' duty, the court should address, sua sponte, whether Mr. Kay contractually assumed the risk of hazardous driving conditions through his continued work for Mr. Wiggins d/b/a Option Rentals.[9]

On the other hand, *Wilson* contains language indicating that contractual assumption of the risk, both voluntary and contractual, was and is an affirmative defense. *Wilson*, 354 A.2d at 402 ("While it is true that 14 M.R.S.A. § 156 does not specifically abolish the *defense* of assumption of the risk...") (emphasis added). If the doctrine of contractual assumption of the risk should be treated as an affirmative defense, it is clear that Budget Truck has not raised this defense. In addition, it is also clear that the

[8] *Foster* determined that it need not address whether contractual assumption of risk was applicable in the absence of a contract because it found that defendant owed the officers pursuing him a duty of care not to attempt to escape from their lawful arrest. *Id.* at *6-*7.

[9] Based on the record presented, an argument could be made that Mr. Wiggins did not owe Mr. Kay a duty of care under this doctrine due to an implied-in-fact contract, under which Mr. Kay contractually assumed the risks of transporting Budget Truck vehicles in potentially hazardous weather conditions. (Pls. A.S.M.F. ¶¶ 39, 152-155.)

25

Plaintiffs did not have this issue in mind when presenting their prima facie case for wrongful death. In light of all of the above, the court will not base its ruling on Mr. Kay's potential contractual assumption of the risk.

Instead, the court will continue with its analysis of an employer's duty of care in light of inclement winter weather. As pointed out by Budget Truck, the Law Court has recognized and discussed this limitation on the duty of care in *Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, 26 A.3d 787, *Alexander v. Mitchell*, 2007 ME 108, 930 A.2d 1016, and *Budzko v. One City Center Associates Limited Partnership*, 2001 ME 37, ¶ 24, 767 A.2d 310.

In *Davis*, the plaintiff was injured when she slipped and fell in a parking lot of the hospital at which she worked. 2011 ME 88, ¶ 3, 26 A.3d 787. The hospital had contracted with the defendant, R C & Sons to plow and sand all of its parking areas, and to clean and salt all of its sidewalks. *Id.* At the time the plaintiff was injured, the defendant was still plowing the parking lot, but had not sanded it. *Id.* The defendant filed a motion for summary judgment arguing that it did not owe the plaintiff a duty of care. *Id.* at ¶ 5. The plaintiff responded that the defendant did owe a duty of care because the defendant negligently created the dangerous condition of untreated ice, covered by a thin skim of obscuring snow by failing to treat the ice after plowing the area. *Id.* at ¶ 18.

*Davis* explained that while a non-possessor of land who negligently creates a dangerous hazard may be liable for reasonably foreseeable harms, "in cases involving injuries sustained as a result of the annual risks posed by winter weather, it is particularly important to consider whether the dangerous hazard was created by the non-possessor's

26

actions or by the natural accumulation of snow or ice." *Id.* at ¶ 21. *Davis* stated that "[i]n determining the existence and scope of a duty in cases involving injuries sustained as a result of snow and ice conditions, we are informed by the annual risks created by the relatively harsh winters in Maine and recognize that requiring landowners or non-possessors 'to fully protect against hazards created by snow and ice [is] simply impracticable." *Id.* (quoting *Alexander v. Mitchell*, 2007 ME 108, ¶¶ 17-18, 22, 930 A.2d 1016).

Under this law, *Davis* determined that the "precipitating cause" of the hazardous condition was the weather and that by "plowing the snow in the parking lot, [the defendant] did not create the layer of ice that remained beneath the snow." *Id.* at ¶ 22 (citing *Alexander v. Mitchell*, 2007 ME 108, ¶¶ 30-31, 930 A.2d 1016). Stated differently, "the actions taken by [the defendant] did not create the hazard that led to [plaintiff's] fall." *Id.* Accordingly, the court affirmed the grant of summary judgment against the plaintiff. *Id.*

In *Alexander v. Mitchell*, the Law Court addressed the question of whether "a person or company that has contracted with a municipality to plow, salt, and sand the town's roads owe[s] a general duty of care to all members of the public using those roads based on the terms of the contract[.]" 2007 ME 108, ¶ 1, 930 A.2d 1016. In that case, a major snowstorm left snow and ice on a town's roadways. *Id.* at ¶ 3. The defendant was contractually obligated to the town to plow several of its roads. *Id.* at ¶ 4. The plaintiff was involved in a collision on one of the roads the defendant had contracted to plow. *Id.* at ¶¶ 3-4. The plaintiff alleged that the road on which she crashed was covered with snow and slush, at the time of the accident and had not been properly cleared or sanded.

27

*Id.* at ¶ 6. The defendant moved for summary judgment claiming that he owed no legal duty to the plaintiff to remove snow and ice from the road. *Id.* at ¶ 7.

In resolving the appeal, *Alexander* first explained that the determination of "what" is a defendant's duty "involves the question of whether the defendant is under any obligation for the benefit of the particular plaintiff." *Id.* at ¶ 15. "In a tort analysis, the duty is always the same—to conform to the legal standard of reasonable conduct in light of the apparent risk." *Id.* (quoting *Searles v. Trs. of St. Joespeh's Coll.*, 1997 ME 128, ¶ 5, 695 A.2d 1206). The harder question, the court explained, was "*when* a duty will be imposed...." *Id.* (emphasis in original). In resolving this question, the court "must always consider societal expectations regarding behavior and individual responsibility in allocating risks and costs, and [the court] consider[s] the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." *Id.* (quoting *Decker v. New England Pub. Warehouse, Inc.*, 2000 ME 76, ¶ 7, 749 A.2d 762). The court then turns "to the expectations and assumptions that have existed historically in matters relating to the reduction or elimination of risks caused by winter weather." *Id.* at ¶ 16.

Stemming from this analysis, *Alexander* looked at Maine's common law, Legislative law, and the common law of other states in arriving at its determination that the defendant did not owe the plaintiff a duty of care. *See id.* at ¶¶ 17-32. In particular, *Alexander* declined to shift liability to private parties who contract to plow a municipality's roads noting:

> that [defendant's] contractual obligation was to the Town; the Town was immune from liability through legislative action; the contractual responsibility was for the plowing of public roads; the precipitating cause of the road conditions was weather, not [defendant's] actions; and the

28

assignment of a duty in tort in these circumstances could result in open-ended responsibility for those plowing Maine's roads. Our conclusion is based not only on legal precedent, but also on common law principles: creating a new duty is disfavored because of the pervasiveness of the annual risk caused by ice and snow on Maine roads.

*Id.* at ¶ 31 (citations omitted).

In support of this holding, *Alexander* explained that *Budzko* was "not helpful in the question of duty before us" because that case was "informed by the nature of landowner liability for hazardous conditions" much more than "it was related to the buildup of snow and ice." *Id.* at ¶ 24. *Alexander* explained that *Budzko* did not involve an "openended duty," but instead concerned "the ordinary responsibility of a landowner, regarding a small and manageable part of its property, to make reasonable efforts to reduce risks to those using the property." *Id.*

As indicated, *Budzko* involved an injury suffered by the plaintiff when she slipped and fell on an icy stairway landing of a commercial building owned by the defendants. 2001 ME 37, ¶ 2, 767 A.2d 310. The defendants were responsible for treating snow and ice during the winter when approximately 500 to 1000 people would enter and exit the building on a daily basis. *Id.* at ¶¶ 2-3. At trial, the jury returned a verdict in favor of the plaintiff and the trial court denied the defendants' motion for judgment as a matter of law. *Id.* at ¶ 8. On appeal, *Budzko* affirmed explaining that there was sufficient evidence to support the jury's finding that the defendants breached their duty to reasonably respond to foreseeable dangers and keep their premises reasonably safe when significant numbers of invitees may be anticipated to enter or leave the premises during a winter storm. *Id.* at ¶¶ 15-16.

Taken together, these cases demonstrate that Maine does not impose open-ended duties to protect individuals from hazards stemming from inclement weather. Applied to the present situation, the court finds that an employer does not have a duty to predict localized weather events that create unsafe driving conditions. Stated differently, Maine law does not impose a duty on an employer to not only pay attention to weather reports, but also to predict the conditions on a particular stretch of road before sending a worker out to travel in a motor vehicle.

However, viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, there is arguably a genuine issue of material fact as to whether Mr. Wiggins breached his duty to provide a reasonably safe work environment. This is because there is evidence that Mr. Wiggins had specific knowledge of the dangerous road conditions on the morning of December 31, 2011, but did not take any steps to warn or prevent Mr. Kay from driving in said conditions. In particular, Mr. Maskell testified that Mr. Wiggins "came from – his house is north of there and he said it was pretty slippery coming in an that it was patchy and he wouldn't have sent them out...." (Maskell Dep., 21.) Although not made clear from the testimony, a reasonable juror could arguably infer from this statement that Mr. Wiggins' commute took place before Mr. Kay's accident and was in the same localized area where Mr. Kay was driving. Building off these inferences, a reasonable juror could credit Mr. Wiggins' testimony that the roads were slippery and patchy. Furthermore, in light of other evidence indicating that Mr. Wiggins *did* tell Mr. Kay to carry out the transfer on December 31, 2011,[10] a reasonable juror could find Mr. Wiggins was lying about not

---

[10] (McGruder Dep., 50-51.)

30

ordering the transfer—perhaps to assuage his guilt or for fear of liability—but telling the truth about his knowledge of the dangerous road conditions that morning. Putting this together, a reasonable juror could conclude that Mr. Wiggins knew or should have known that the condition of the local roads upon which Mr. Kay was set to travel were unsafe for driving. Based on this string of factual determinations, a reasonable juror could arguably find that Mr. Wiggins breached his duty of care to Mr. Kay by failing to warn or prevent him from attempting to carry out the vehicle transfer on the morning of December 31, 2011 when he knew the particular local conditions were hazardous. While this evidence could be considered too speculative—especially considering that Mr. Wiggins' alleged statements were made after the accident and could be construed as self-serving—the court need not grapple too heavily with this issue as it is clear that the Plaintiffs cannot demonstrate a prima facie case of causation.

### B. No Reasonable Juror Could Find that Mr. Wiggins Conduct was a Proximate Cause of Mr. Kay's Injuries

Budget Truck argues that the Plaintiffs cannot establish that it proximately cause Mr. Kay's death because the accident was the result of 1) a sudden drop in temperature that caused the road surface to freeze combined with 2) Mr. Kay driving too fast for the icy conditions. Budget Truck further argues that there is no evidence that it—or Mr. Wiggins—knew the conditions were unsafe that day or even that Mr. Kay was going to drive that day. In support, Budget Truck argues that an hour before the accident, Mr. Kay thought the weather was fine, Mr. Kay was not the type of person who would put his grandchildren, Messrs. Norwood and Bourque, in harm's way by taking them on a transport if he thought the weather was going to be bad, there was no urgency to the

31

transfer, and Mr. Kay could have performed the transfer on a later date if he needed to for any reason.

Plaintiffs respond that Mr. Wiggins' conduct as an agent for Budget Truck was a substantial factor in bringing about Mr. Kay's death. In particular, they argue that Mr. Wiggins had knowledge of the dangerous weather conditions, but still gave Mr. Kay specific orders to complete the transfer by December 31, 2011. Indeed, they argue that after Mr. Kay's death, Mr. Wiggins realized his culpability in the event and began to falsely tell others that he had not told Mr. Kay to complete the transfer. Plaintiffs further claim that the weather conditions were not localized and that Mr. Kay was not traveling at an excessive speed. Finally, Plaintiffs argue that while the weather was one cause of Mr. Kay's death, a reasonable juror could find that Mr. Wiggins' alleged order that Mr. Kay perform the transfer was a substantial factor in bringing about his death.

In order to survive summary judgment, Plaintiffs must make out a prima facie case that Budget Truck—through its own actions or vicariously through Mr. Wiggins—proximately caused Mr. Kay's death. *See Crowe v. Shaw*, 2000 ME 136, ¶ 9, 755 A.2d 509. The principle of proximate cause contains two elements, substantiality and foreseeability. *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 42, 948 A.2d 1223. In particular, "evidence is sufficient to support a finding of cause if the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence." *Id.* (quoting *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 77). "[T]here may be more than one proximate cause of a particular injury."

32

*Fournier v. Rochambeau Club*, 611 A.2d 578, 579 (Me. 1992). However, "[t]he mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or even if the probabilities are evenly balanced, a defendant is entitled to a judgment." *Merriam v. Wanger*, 2000 ME 159, ¶ 8, 757 A.2d 77 (citations omitted).

The question of whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries is generally a question of fact reserved for the jury's determination. *Tolliver*, 2008 ME 83, ¶ 42, 948 A.2d 1223. However, a jury cannot find proximate caused based only on speculation or where a claim is wholly unsupported by the evidence. *Estate of Smith v. Cumberland Cnty.*, 2013 ME 13, ¶ 18, 60 A.3d 759.

In assessing whether the Plaintiffs have presented a prima facie case of causation, Budget Truck directs the court to *Estate of Smith v. Cumberland County*, 2013 ME 13, 60 A.3d 759, *Crowe v. Shaw*, 2000 ME 136, 755 A.2d 509, *Cyr v. Adamar Assoc. Ltd. Ptrs.*, 2000 ME 110, 755 A.2d 509, and *Wanless v. Winner's Corp.*, 341 S.E.2d 250 (Ga. App. 1986).

In *Estate of Smith v. Cumberland County*, the Law Court affirmed summary judgment for the defendants where there was no evidence that the defendant's action caused a fatal motorcycle accident. 2013 ME 13, ¶ 1, 60 A.3d 759. In that case, a police officer observed the decedent travelling at forty-seven miles per hour in a thirty-mile per hour zone on a motorcycle. *Id.* at ¶ 3. Based on that observation, the officer turned around to follow the motorcycle and activated his emergency lights to initiate a stop. *Id.* The motorcycle accelerated to "a very high speed" and the officer reported that he exceeded ninety-miles per hour without catching the fleeing motorcycle, *Id.* at ¶ 4. At

33

times during the dispute, the motorcycle crossed the centerline and travelled in the oncoming traffic lane. *Id.* The officer contends that he lost sight of the motorcycle at an intersection and when he turned the corner, he saw the motorcycle was off the pavement on its side and the decedent was lying on the ground approximately twenty-seven feet from the motorcycle. *Id.* at ¶ 5. The officer asserted that his cruiser did not make contact with the motorcycle, but he admittedly radioed dispatch using an erroneous code indicating his cruiser was involved in a collision. *Id.* at ¶ 5. The parties agreed that there was no physical evidence that the cruiser made contact with the motorcycle. *Id.*

Based on this evidence, *Estate of Smith* found summary judgment was warranted because there was not sufficient evidence to allow a fact-finder to make a factual determination in favor of the estate without speculating. *Id.* at ¶ 19. This was because the estate presented no evidence that the officer's vehicle was near the decedent's when the crash occurred and there existed evidence indicating to the contrary. *Id.* at ¶ 20.

This case is similar to the present dispute in that there is no direct physical connection between the respective defendants' actions and the plaintiffs' injuries. However, *Estate of Smith* is distinguishable because the officer in that case did not order the driver out onto the road, as allegedly happened in this case. (McGruder Dep., 50-51.) Accordingly, *Estate of Smith* provides some insight, but is not dispositive of the causation question.

Similarly, in *Crowe v. Shaw*, the Law Court affirmed the trial court's grant of summary against the plaintiff because it was clear that the defendant did not proximately cause the plaintiff's injuries. 2000 ME 136, ¶ 2, 755 A.2d 509. In *Crowe*, the plaintiff was driving on Fuller Road in her car with her sister as a passenger while the defendant

34

was driving in the opposite direction on the same road with his son as a passenger. *Id.* at ¶ 3. The "weather was poor and the road was icy." *Id.* As the plaintiff's car crested a hill, she lost control of her vehicle and it started to slide down the hill. *Id.* The defendant saw plaintiff's out of control car and pulled to the right, coming to a stop—or almost to a stop—next to a snow bank. *Id.* Still sliding sideways into the defendant's lane of traffic, plaintiff's car hit the defendant's. *Id.* The impact injured the plaintiff and killed her sister. *Id.* Approximately one hour after the accident, a blood sample was taken from the defendant that showed a blood-alcohol level of .06. *Id.*

Based on these facts, *Crowe* determined that the defendant's operation of his vehicle did not in any way contribute to the plaintiff's damages. *Id.* at ¶ 11. This was because the defendant had stopped, or nearly stopped, his vehicle well to the right of his side of the road when the plaintiff, having lost control of her vehicle, collided with him. Because the plaintiff presented no evidence that the defendant's operation of his vehicle while intoxicated caused her injuries, the court granted summary judgment. *Id.*

*Crowe* is of limited utility in resolving the causation question in this case because the defendant in *Crowe*—while potentially breaching a duty to the public in general by driving after consuming alcohol—did not take any active role in bringing about the plaintiff's injuries unlike Mr. Wiggins alleged affirmative action of ordering Mr. Kay to carry out the transfer on December 31, 2011. (McGruder Dep., 50.)

Next, in *Cyr v. Adamar Assoc. Ltd. Ptrs.*, the Law Court affirmed a grant of summary judgment because there was no proximate cause between the plaintiff's injuries and the defendant's actions. 2000 ME 110, ¶¶ 1, 8, 755 A.2d 509. The decedent registered as a guest at a hotel owned and operated by the defendant while attending a

work seminar. *Id.* at ¶ 2. While in the hotel lounge, the decedent noticed a man was staring at her. *Id.* Around 11:00 p.m. the decedent placed a twenty-dollar bill on the lounge table and told her colleagues to pay for the beer she had just ordered while she want to the restroom. *Id.* The decedent never returned to the lounge and her body was found the next day in a field adjacent to the hotel parking lot. *Id.* at ¶ 3. The decedent's injuries were consistent with a struggle and the man who was staring at the decedent later pled guilty to murdering her. *Id.* at ¶ 3. The hotel did not own the field where the decedent's body was found. *Id.*

In *Cyr*, the court found there was no evidence that the defendant proximately caused the decedent's death. *Id.* at ¶ 7. Although it would not be unreasonable to assume the decedent was abducted from the defendant's premises, "the evidence does not reveal whether [the decedent] voluntarily left the [defendant's] property with [the killer] or whether he abducted her. *Id.* This lack of evidence and the discovery of the decedent's body on property not owned by the hotel demonstrated "that the relation between the [defendant's] security measures and [the decedent's] death is too uncertain and tenuous to hold [the defendant] liable." *Id.* While not directly on point, *Cyr* shares a commonality with the present case insofar as both plaintiffs premise their causation argument on the defendants alleged failure to take proper cautionary steps to protect them.

Finally, in *Wanless v. Winner's Corp.*, a Georgia court of appeals affirmed a grant of summary judgment that the defendant's alleged negligence did not proximately cause the plaintiff's injuries. 341 S.E.2d at 252. In *Wanless*, the decedent—a seven-week old infant—was a passenger in a car driven by her father. *Id.* at 250. The car was a two-seater and was also occupied by the decedent's mother and sister. *Id.* The decedent's

mother occupied the passenger seat, her sister was on the floor of the car behind the two seats, and the decedent was in her mother's lap. *Id.* None of the passengers wore a seat belt or a restraining device. *Id.*

The decedent's father was driving his wife to work at the defendant's restaurant because the roads around their house were covered with ice and snow. *Id.* at 250. The decedent's parents owned two large vehicles, but opted to drive the smaller, two-seated car. *Id.* Although the decedent's father was driving very slowly, the car skidded on a patch of ice, crossed the centerline of the road, and collided with another car. *Id.* The decedent's complaint alleged that on the day of the accident, her mother told her supervisor that she was unable to go to work because a snowstorm had made highway conditions dangerous. *Id.* The complaint further alleged that the supervisor told the decedent's mother that she "must report for work and that her failure to come to work would result in the termination of her employment." *Id.*

*Wanless* determined that the defendant's alleged negligence did not proximately cause the decedent's death because "the conduct of defendant could have done nothing more than give rise to the occasion which made plaintiff's injuries possible." *Id.* at 252. Instead, "[o]ther circumstances preponderated in causing [decedent's] injuries" and "defendant's conduct was, at best, a remote cause" thereof. *Id.* Factually, *Wanless* is very similar to, and arguably more egregious than the present dispute. This is because the supervisor in *Wanless* explicitly ignored the plaintiff's plea that she did not want to drive to work due to bad weather shortly before the crash. *Id.* at 250. In the present case, Mr. Kay raised concerns about bad weather on December 30, 2011, to which Mr. Wiggins acceded. (McGruder Dep., 50-51.) There is no evidence, however, that Mr.

Kay voiced any concern about performing the transfer the following morning due to inclement weather. To the contrary, the evidence indicates that Mr. Kay, as well as his passengers, Messrs. Bourque and Norton, believed the road conditions were fine on the morning of December 31, 2011. (S. Henderson Dep., 61-62; Bourque Dep., 13, 18; J. Henderson Dep., 41.)

While *Wanless* is a Georgia opinion that is not binding on Maine Courts, it can nevertheless be relied on for its persuasive value. *Hoag v. Dick*, 2002 ME 92, ¶ 16 n.2 (citation to analogous out-of-state cases as persuasive authority is appropriate). Here, the court finds the reasoning in *Wanless* persuasive. This is due in part to the court's determination that *Wanless* is in line with Maine's limitations on liability stemming from "the annual risks created by the relatively harsh winters in Maine[.]" *See Davis*, 2011 ME 88, ¶ 21, 26 A.3d 787; *see also Alexander*, 2007 ME 108, ¶ 31, 930 A.2d 1016. Accordingly, similar to *Wanless*, the court finds that no reasonable juror could find Mr. Wiggins was the proximate cause of Mr. Kay's injuries because Mr. Wiggins' conduct simply gave rise to the occasion which made Mr. Kay's injuries possible. Mr. Wiggins actions did not play a substantial part in bringing about Mr. Kay's injuries, instead, those injuries were brought about due to the annual risks posed by Maine's relatively harsh winters.

### III.     Plaintiffs' Cause of Action for Punitive Damages Fails

"Punitive damages must be based on underlying tortious conduct by the defendant." *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 155 (Me. 1979). Here, the court has rule that plaintiffs' have failed to make out a prima facie case of wrongful death. Because this is the only cause of action underlying plaintiffs' request for punitive

38

damages, there is no underlying tortious conduct from which plaintiffs can seek to recover punitive damages. Accordingly, the court grants summary judgment against Plaintiffs' cause of action for punitive damages as to defendant Budget Truck.

## IV. Conclusion

Even assuming that Budget Truck is vicariously liable for the actions of Mr. Wiggins, Plaintiffs have failed to make out a prima facie showing that any conduct by Budget Truck was a proximate cause of Mr. Kay's injuries. At most, Budget Truck's alleged negligence gave rise to the occasion that made Mr. Kay's injuries possible. This finding is reinforced by Maine's recognition of limitations on liability stemming from the annual risks created by winter weather conditions.

Because this lack of proximate cause warrants summary judgment against Plaintiffs' wrongful death cause of action against Budget Truck, the court need not—and does not—address Budget Truck's argument regarding agency and vicarious liability.

Finally, because the award of summary judgment against Plaintiffs' wrongful death cause of action disposes of the underlying tortious conduct from which Plaintiffs seek to recover punitive damages, the court grants summary judgment against Plaintiffs' cause of action for punitive damages as to Budget Truck.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: May 14, 2015

_____
Michaela Murphy, Justice
Maine Superior Court

39

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2013-00166


**DOCKET RECORD**

JOSHUA HENDERSON (PR)  - PLAINTIFF
21 WISCASSET ROAD
PITTSTON ME 04345
Attorney for: JOSHUA HENDERSON (PR)
SUMNER LIPMAN  - RETAINED
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: JOSHUA HENDERSON (PR)
PETER B BICKERMAN  - RETAINED
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: JOSHUA HENDERSON (PR)
DAVID LIPMAN  - WITHDRAWN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

STACEY HENDERSON  - PLAINTIFF
61 WORCESTER STREET
AUGUSTA ME 04330
Attorney for: STACEY HENDERSON
SUMNER LIPMAN  - RETAINED
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: STACEY HENDERSON
PETER B BICKERMAN  - RETAINED
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

Attorney for: STACEY HENDERSON
DAVID LIPMAN  - WITHDRAWN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051


vs
TRESSA SPRINGMANN (PR)  - DEFENDANT

DOCKET RECORD

Attorney for: TRESSA SPRINGMANN (PR)
ELIZABETH GERMANI  - RETAINED
GERMANI MARTEMUCCI  RIGGLE & HILL
43 DEERING STREET
PORTLAND ME 04101


BUDGET TRUCK RENTAL LLC - DEFENDANT

Attorney for: BUDGET TRUCK RENTAL LLC
MICHAEL E SAUCIER  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

Attorney for: BUDGET TRUCK RENTAL LLC
HILLARY J BOUCHARD  - RETAINED 08/01/2013
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


CENTRE POINT FUNDING LLC - DEFENDANT

Attorney for: CENTRE POINT FUNDING LLC
MICHAEL E SAUCIER  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

Attorney for: CENTRE POINT FUNDING LLC
HILLARY J BOUCHARD  - RETAINED 08/01/2013
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


AVIS BUDGET CAR RENTAL LLC - DEFENDANT

Attorney for: AVIS BUDGET CAR RENTAL LLC
MICHAEL E SAUCIER  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

Attorney for: AVIS BUDGET CAR RENTAL LLC
HILLARY J BOUCHARD  - RETAINED 08/01/2013
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

AVIS BUDGET GROUP INC - DEFENDANT

Attorney for: AVIS BUDGET GROUP INC
MICHAEL E SAUCIER  - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

Attorney for: AVIS BUDGET GROUP INC
HILLARY J BOUCHARD  - RETAINED 08/01/2013
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


Filing Document: COMPLAINT                    Minor Case Type: AUTO NEGLIGENCE
Filing Date: 07/08/2013

## Docket Events:

07/08/2013 FILING DOCUMENT - COMPLAINT FILED ON 07/08/2013

07/08/2013 Party(s):  JOSHUA HENDERSON (PR)
           ATTORNEY - RETAINED ENTERED ON 07/08/2013
           Plaintiff's Attorney: SUMNER LIPMAN

07/08/2013 Party(s):  STACEY HENDERSON
           ATTORNEY - RETAINED ENTERED ON 07/08/2013
           Plaintiff's Attorney: SUMNER LIPMAN

07/18/2013 Party(s):  CENTRE POINT FUNDING LLC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/09/2013

07/18/2013 Party(s):  CENTRE POINT FUNDING LLC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 07/18/2013

07/18/2013 Party(s):  AVIS BUDGET CAR RENTAL LLC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/09/2013

07/18/2013 Party(s):  AVIS BUDGET CAR RENTAL LLC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 07/18/2013

07/18/2013 Party(s):  BUDGET TRUCK RENTAL LLC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/18/2013

07/18/2013 Party(s):  BUDGET TRUCK RENTAL LLC
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 07/18/2013

08/01/2013 Party(s):  TRESSA SPRINGMANN (PR)
           RESPONSIVE PLEADING - ANSWER FILED ON 08/01/2013
           Defendant's Attorney: ELIZABETH GERMANI

08/01/2013 Party(s):  TRESSA SPRINGMANN (PR)

ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: ELIZABETH GERMANI

08/01/2013 Party(s): AVIS BUDGET CAR RENTAL LLC
SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/15/2013
ACCEPTANCE OF SERVICE BY PAUL MATHEWS AGENT FOR AVIS BUDGET GROUP

08/01/2013 Party(s): AVIS BUDGET CAR RENTAL LLC
SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/01/2013

08/01/2013 Party(s): BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC
RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

08/01/2013 Party(s): BUDGET TRUCK RENTAL LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

Party(s): CENTRE POINT FUNDING LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

Party(s): AVIS BUDGET CAR RENTAL LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

08/01/2013 Party(s): BUDGET TRUCK RENTAL LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: HILLARY J BOUCHARD

Party(s): CENTRE POINT FUNDING LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: HILLARY J BOUCHARD

Party(s): AVIS BUDGET CAR RENTAL LLC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: HILLARY J BOUCHARD

08/01/2013 Party(s): AVIS BUDGET GROUP INC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

08/01/2013 Party(s): AVIS BUDGET GROUP INC
ATTORNEY - RETAINED ENTERED ON 08/01/2013
Defendant's Attorney: HILLARY J BOUCHARD

08/01/2013 Party(s): AVIS BUDGET GROUP INC
SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/15/2013

08/01/2013 Party(s): AVIS BUDGET GROUP INC
SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/01/2013

08/01/2013 Party(s): AVIS BUDGET GROUP INC

RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 08/01/2013
Defendant's Attorney: MICHAEL E SAUCIER

08/01/2013 ORDER - SCHEDULING ORDER ENTERED ON 08/01/2013
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL

08/01/2013 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 04/01/2014

08/01/2013 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 08/01/2013
M MICHAELA MURPHY , JUSTICE

08/22/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
OTHER FILING - ENTRY OF APPEARANCE FILED ON 08/19/2013
Plaintiff's Attorney:  DAVID LIPMAN

08/22/2013 Party(s):  JOSHUA HENDERSON (PR)
ATTORNEY - RETAINED ENTERED ON 08/19/2013
Plaintiff's Attorney: DAVID LIPMAN

Party(s):  STACEY HENDERSON
ATTORNEY - RETAINED ENTERED ON 08/19/2013
Plaintiff's Attorney: DAVID LIPMAN

08/22/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR WITHDRAWAL OF CNSL FILED ON 08/19/2013
Plaintiff's Attorney:  BENJAMIN J TUCKER

08/27/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR WITHDRAWAL OF CNSL GRANTED ON 08/26/2013
M MICHAELA MURPHY , JUSTICE
COPIES TO PARTIES/COUNSEL                                             BENJAMIN TUCKER
TO WITHDRAW

10/03/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
LETTER - FROM PARTY FILED ON 09/30/2013
Plaintiff's Attorney:  PETER B BICKERMAN
PARTIES AGREE TO ADR EXTENSION

10/09/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
OTHER FILING - ENTRY OF APPEARANCE FILED ON 10/07/2013
Plaintiff's Attorney:  PETER B BICKERMAN

10/09/2013 Party(s):  JOSHUA HENDERSON (PR)
ATTORNEY - RETAINED ENTERED ON 10/07/2013
Plaintiff's Attorney: PETER B BICKERMAN

Party(s):  STACEY HENDERSON
ATTORNEY - RETAINED ENTERED ON 10/07/2013
Plaintiff's Attorney: PETER B BICKERMAN

10/09/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON

OTHER FILING - NOTICE WITHDRAWAL OF COUNSEL FILED ON 10/09/2013
Plaintiff's Attorney:   DAVID LIPMAN

10/09/2013 Party(s):  JOSHUA HENDERSON (PR)
ATTORNEY - WITHDRAWN ORDERED ON 10/09/2013
Plaintiff's Attorney: DAVID LIPMAN

10/09/2013 Party(s):  STACEY·HENDERSON
ATTORNEY - WITHDRAWN ORDERED ON 10/09/2013
Plaintiff's Attorney: DAVID LIPMAN

10/30/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION ALTER/AMEND ORDER/JUDG FILED ON 10/29/2013
Plaintiff's Attorney:   PETER B BICKERMAN
PLTFS' UNOPPOSED MOTION TO MODIFY THE SCHEDULING ORDER

11/03/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION ALTER/AMEND ORDER/JUDG GRANTED ON 10/30/2013
M MICHAELA MURPHY , JUSTICE
COPIES TO PARTIES/COUNSEL                                            EXPERT
WITNESSES: PLTF 4/1, DEFTS 5/1.  DISCOVERY 8/1.  ADR 3/29.  JURY FEES: PLTF 6/27, DEFTS
7/7.

11/03/2013 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 08/01/2014

12/19/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR LEAVE FILED ON 12/19/2013
Plaintiff's Attorney:  CALEB GANNON
TO FILE AMENDED COMPLAINT

12/31/2013 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
LETTER - FROM PARTY FILED ON 12/31/2013
Plaintiff's Attorney:   CALEB GANNON
DEFENSE COUNSEL HAS INDICATED AN INTENTION TO FILE OBJECTION TO PLTF'S MOTION FOR LEAVE TO
AMEND COMPLAINT

01/07/2014 Party(s):  TRESSA SPRINGMANN (PR)
OTHER FILING - OPPOSING MEMORANDUM FILED ON 01/03/2014
Defendant's Attorney: ELIZABETH GERMANI
DEFT SPRINGMANN'S MEMORANDUM OF LAW IN OPPOSITION TO PLTFS' MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT

01/08/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
OTHER FILING - REPLY MEMORANDUM FILED ON 01/08/2014
Plaintiff's Attorney:  CALEB GANNON
PLTFS' REPLY TO DEFT SPRINGMAN'S MEMORANDUM OF LAW IN OPPOSITION TO PLTFS' MOTION FOR
LEAVE TO FILE AMENDED COMPLAINT

01/10/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR LEAVE GRANTED ON 01/10/2014
M MICHAELA MURPHY , JUSTICE
AMENDED COMPLAINT ADDING COUNT III IS ALLOWED.

01/12/2014 Party(s): BUDGET TRUCK RENTAL LLC
OTHER FILING - OPPOSING MEMORANDUM FILED ON 01/10/2014
Defendant's Attorney: MICHAEL E SAUCIER
OBJECTION TO PLTF'S MOTION TO AMEND THE COMPLAINT.

01/23/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR LEAVE VACATED ON 01/20/2014
M MICHAELA MURPHY , JUSTICE
ORDER IS VACATED. COURT WAS NOT PRESENTED WITH OPPOSITION. SET FOR HEARING.

01/28/2014 Party(s): TRESSA SPRINGMANN (PR)
RESPONSIVE PLEADING - ANSWER TO AMENDED PLEADING FILED ON 01/16/2014
Defendant's Attorney: ELIZABETH GERMANI
ANSWER TO AMENDED COMPLAINT OF DEFT TRESSA SPRINGMANN

01/28/2014 Party(s): TRESSA SPRINGMANN (PR)
LETTER - FROM PARTY FILED ON 01/23/2014
Defendant's Attorney: ELIZABETH GERMANI
RE: PLTF'S AMENDED COMPLAINTS DATED 12/18 AND 1/15; ANSWERED ON 1/15, WILL NOT FILE
ANOTHER ANSWER.

01/29/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 01/29/2014
Plaintiff's Attorney: CALEB GANNON
(RE: REPLY TO DEFT'S OBJECTION TO PLTF'S MOTION TO AMEND COMPLAINT)

01/29/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
OTHER FILING - REPLY MEMORANDUM FILED ON 01/29/2014
Plaintiff's Attorney: CALEB GANNON
PLTFS' REPLY TO DEFT BUDGET TRUCK'S OBJECTION TO PLTFS' MOTION TO AMEND THE COMPLAINT

01/30/2014 HEARING - OTHER MOTION SCHEDULED FOR 02/27/2014 at 08:30 a.m. in Room No. 2
M MICHAELA MURPHY , JUSTICE
MOTION TO FILE AMENDED COMPLAINT

01/30/2014 HEARING - OTHER MOTION NOTICE SENT ON 01/30/2014
MOTION TO FILE AMENDED COMPLAINT

02/27/2014 HEARING - OTHER MOTION HELD ON 02/27/2014
M MICHAELA MURPHY , JUSTICE
Defendant's Attorney: ELIZABETH GERMANI
Plaintiff's Attorney: CALEB GANNON
MOTION TO FILE AMENDED COMPLAINT                                    ALSO APPEARING:
MICHAEL SAUCIER, ESQ.                           TAPE 1826, INDEX 1667-2462

02/27/2014 CASE STATUS - DECISION UNDER ADVISEMENT ON 02/27/2014
M MICHAELA MURPHY , JUSTICE
PLTF'S MOTION TO AMEND COMPLAINT

03/10/2014 ORDER - COURT ORDER ENTERED ON 03/09/2014
M MICHAELA MURPHY , JUSTICE
RE: PLTF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT FILED 12/19/13.     MOTION TO AMEND
COMPLAINT IS GRANTED OVER OBJECTION OF BOTH DEFENDANTS.

03/10/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
            SUPPLEMENTAL FILING - AMENDED COMPLAINT FILED ON 01/17/2014
            Plaintiff's Attorney:  CALEB GANNON


03/19/2014 Party(s):  BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                      BUDGET GROUP INC
            RESPONSIVE PLEADING - ANSWER TO AMENDED PLEADING FILED ON 03/18/2014
            Defendant's Attorney: MICHAEL E SAUCIER
            ANSWER, DEFENSES, AND AFFIRMATIVE DEFENSES TO PLTFS' AMENDED COMPLAINT


04/01/2014 ORDER - REPORT OF ADR CONF/ORDER FILED ON 04/01/2014
            M MICHAELA MURPHY , JUSTICE


04/03/2014 Party(s):  TRESSA SPRINGMANN (PR)
            DISCOVERY FILING - RULE 26(G) LETTER FILED ON 04/03/2014


04/04/2014 ORDER - REPORT OF ADR CONF/ORDER UNRESOLVED ON 03/28/2014


04/11/2014 HEARING - 26(G) CONFERENCE REQUESTED ON 04/03/2014
            Plaintiff's Attorney:  ELIZABETH GERMANI


04/11/2014 HEARING - 26(G) CONFERENCE SCHEDULED FOR 04/16/2014 at 12:30 p.m.  in Room No.  2
            M MICHAELA MURPHY , JUSTICE
            NOTICE TO PARTIES/COUNSEL


04/11/2014 HEARING - 26(G) CONFERENCE NOTICE SENT ON 04/11/2014


04/11/2014 ORDER - REPORT OF ADR CONF/ORDER ENTERED ON 04/09/2014
            M MICHAELA MURPHY , JUSTICE
            ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
            PARTIES/COUNSEL


04/15/2014 Party(s):  TRESSA SPRINGMANN (PR)
            OTHER FILING - ENTRY OF APPEARANCE FILED ON 04/14/2014
            Defendant's Attorney: AMANDA LYNCH


04/16/2014 HEARING - 26(G) CONFERENCE HELD ON 04/16/2014
            M MICHAELA MURPHY , JUSTICE
            Defendant's Attorney: AMANDA LYNCH
            ALSO PARTICIPATING: MICHAEL SAUCIER, ESQ.


04/16/2014 ORDER - 26(G) ORDER ENTERED ON 04/16/2014
            M MICHAELA MURPHY , JUSTICE
            ALL OUTSTANDING INFORMATION REQUESTED AS IDENTIFIED IN DEFT SPRINGMANN'S RULE 26(G) FILING
            SHALL BE PROVIDED BY 5/9/14, INCLUDING ANSWERS TO INTERROGATORIES AND REQUESTS FOR
            PRODUCTION OF DOCUMENTS.


05/02/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
            MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 02/24/2014
            M MICHAELA MURPHY , JUSTICE
            COPIES TO PARTIES/COUNSEL                                      PLTF'S REPLY TO
            OBJECTION TO MOTION TO AMEND COMPLAINT IS ACCEPTED AS TIMELY

06/25/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
          JURY FILING - DEMAND FOR JURY TRIAL FILED ON 06/25/2014


07/29/2014 Party(s): BUDGET TRUCK RENTAL LLC
          MOTION - MOTION EXTEND DISCOVERY FILED ON 07/29/2014
          Defendant's Attorney: MICHAEL E SAUCIER
          CONSENTED-TO MOTION FOR LIMITED EXTENSION OF DISCOVERY


07/30/2014 Party(s): BUDGET TRUCK RENTAL LLC
          MOTION - MOTION EXTEND DISCOVERY GRANTED ON 07/30/2014
          M MICHAELA MURPHY , JUSTICE
          COPIES TO PARTIES/COUNSEL                                    DISCOVERY
          EXTENDED SOLELY FOR THE PUTPOSE OF TAKING DEPOSITION OF BUDGET TRUCK, TO 9/30/14, AND
          DISPOSITIVE MOTIONS DUE BY 10/30/14.


08/13/2014 Party(s): TRESSA SPRINGMANN (PR)
          OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 08/11/2014
          Defendant's Attorney: ELIZABETH GERMANI
          DEFT SPRINGMANN


08/13/2014 OTHER FILING - STATEMENT OF TIME FOR TRIAL FILED ON 08/11/2014
          Defendant's Attorney: ELIZABETH GERMANI
          5 TO 6 DAYS


08/19/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
          OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 08/15/2014
          Plaintiff's Attorney: CALEB GANNON
          PLTFS'


08/19/2014 OTHER FILING - STATEMENT OF TIME FOR TRIAL FILED ON 08/15/2014
          Plaintiff's Attorney: CALEB GANNON
          5 DAYS


08/21/2014 Party(s): BUDGET TRUCK RENTAL LLC,AVIS BUDGET CAR RENTAL LLC,AVIS BUDGET GROUP INC
          OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 08/21/2014
          Defendant's Attorney: MICHAEL E SAUCIER
          DEFTS BUDGET/AVIS


08/21/2014 OTHER FILING - STATEMENT OF TIME FOR TRIAL FILED ON 08/21/2014
          Defendant's Attorney: MICHAEL E SAUCIER
          5 DAYS


10/17/2014 Party(s): TRESSA SPRINGMANN (PR)
          MOTION - MOTION TO DISMISS FILED ON 10/14/2014
          Defendant's Attorney: ELIZABETH GERMANI
          AND FOR SUMMARY JUDGMENT, STATEMENT OF UNDISPUTED MATERIAL FACTS


10/29/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 10/29/2014
          Plaintiff's Attorney: CALEB GANNON
          UNOPPOSED, TO FILE OPPOSITION TO DEFT SPRINGMANN'S MOTION TO DISMISS/SJ

11/03/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 10/31/2014
          M MICHAELA MURPHY , JUSTICE
          COPIES TO PARTIES/COUNSEL                                    PLTFS'
          OPPOSITION TO DEFT SPRINGMANN'S MOTION TO DISMISS/SJ DUE BY 11/14.


11/04/2014 Party(s):  BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                      BUDGET GROUP INC
          MOTION - MOTION SUMMARY JUDGMENT FILED ON 10/30/2014
          Plaintiff's Attorney:  MICHAEL E SAUCIER
          W/ MEMORANDUM OR LAW, STATEMENT OF MATERIAL FACTS


11/12/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 11/12/2014
          Plaintiff's Attorney:  CALEB GANNON
          2ND UNOPPOSED MOTION TO ENLARGE TIME TO FILE OPPOSITION TO DEFT SPRINGMANN'S MOTION TO
          DISMISS AND FOR SJ


11/14/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 11/13/2014
          DANIEL I BILLINGS , JUSTICE
          COPIES TO PARTIES/COUNSEL                                    PLTF'S
          OPPOSITION TO MOTION TO D/M AND SJ DUE 11/21.  DEFT'S REPLY DUE 12/5.


11/21/2014 Party(s):  TRESSA SPRINGMANN (PR)
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 11/18/2014
          Defendant's Attorney: ELIZABETH GERMANI
          DEFT SPRINGMANN'S LIMITED OBJECTION TO BUDGET'S MOTION SJ; OPPOSING SOMF


11/21/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 11/18/2014
          Plaintiff's Attorney:  CALEB GANNON
          UNOPPOSED, TO FILE OPPOSITION TO DEFT BUDGET'S MOTION SJ


11/24/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          OTHER FILING - OPPOSING MEMORANDUM FILED ON 11/21/2014
          Plaintiff's Attorney:  CALEB GANNON
          PLTF'S OPPOSITION TO DEFT SPRINGMANN'S MOTION TO DISMISS/SJ, OPPOSING SOMF AND ADDITIONAL
          SOMF


12/01/2014 Party(s):  BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                      BUDGET GROUP INC
          OTHER FILING - REPLY MEMORANDUM FILED ON 12/01/2014
          Defendant's Attorney: MICHAEL E SAUCIER
          REPLY MEMORANDUM OF LAW TO DEFT SPRINGMANN'S LIMITED OBJECTION TO BUDGET TRUCK DEFTS'
          MOTION SJ


12/03/2014 Party(s):  JOSHUA HENDERSON (PR),STACEY HENDERSON
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 11/24/2014
          M MICHAELA MURPHY , JUSTICE
          COPIES TO PARTIES/COUNSEL                                    PLTF'S
          OPPOSITION TO DEFT BUDGET'S MOTION SJ DUE BY 12/10/14.

12/11/2014 Party(s): TRESSA SPRINGMANN (PR)
        OTHER FILING - REPLY MEMORANDUM FILED ON 12/04/2014
        Defendant's Attorney: ELIZABETH GERMANI
        REPLY TO SUPPORT MOTION TO DISMISS/SJ, REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS,
        AFFIDAVIT OF KAREN SCHWARTZ

12/11/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
        MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 12/10/2014
        Plaintiff's Attorney: CALEB GANNON
        2ND UNOPPOSED, TO FILE OPPOSITION TO DEFT BUDGET'S MOTION SJ

12/18/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
        MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 12/16/2014
        M MICHAELA MURPHY , JUSTICE
        COPIES TO PARTIES/COUNSEL                                              PLTF'S
        OPPOSITION TO DEFT BUDGET TRUCK'S MOTION SJ DUE BY 12/24/14.

12/30/2014 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
        OTHER FILING - OPPOSING MEMORANDUM FILED ON 12/24/2014
        Plaintiff's Attorney: CALEB GANNON
        PLTFS' MEMORANDUM OF LAW TO DEFT BUDGET TRUCK'S MOTION SJ, OPPOSING SOMF AND ADDITIONAL
        SOMF.

01/08/2015 Party(s): TRESSA SPRINGMANN (PR)
        OTHER FILING - REPLY MEMORANDUM FILED ON 01/05/2015
        Defendant's Attorney: ELIZABETH GERMANI
        DEFT SPRINGMANN'S LIMITED REPLY SOMF RE: BUDGET'S MOTION SJ

01/09/2015 HEARING - MOTION TO DISMISS SCHEDULED FOR 02/03/2015 at 09:30 a.m. in Room No. 2
        M MICHAELA MURPHY , JUSTICE

01/09/2015 HEARING - MOTION TO DISMISS NOTICE SENT ON 01/09/2015

01/09/2015 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 02/03/2015 at 09:30 a.m. in Room No. 2
        M MICHAELA MURPHY , JUSTICE

01/09/2015 HEARING - MOTION SUMMARY JUDGMENT NOTICE SENT ON 01/09/2015

01/14/2015 Party(s): BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                    BUDGET GROUP INC
        MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 01/12/2015
        Defendant's Attorney: MICHAEL E SAUCIER
        UNOPPOSED, TO FILE MOTION SJ REPLY

01/14/2015 Party(s): JOSHUA HENDERSON (PR),STACEY HENDERSON
        MOTION - MOTION FOR LEAVE FILED ON 01/13/2015
        Plaintiff's Attorney: CALEB GANNON
        TO EXCEED PAGE LIMIT. UNOPPOSED.

01/22/2015 Party(s): BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                    BUDGET GROUP INC
        OTHER FILING - ENTRY OF APPEARANCE FILED ON 01/16/2015
        Defendant's Attorney: BRENDAN R O'ROURKE

01/22/2015 Party(s):   BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                       BUDGET GROUP INC
           OTHER FILING - REPLY MEMORANDUM FILED ON 01/16/2015
           Defendant's Attorney: MICHAEL E SAUCIER
           BUDGET DEFTS' REPLY IN SUPPORT OF MOTION SJ, OBJECTIONS/RESPONSES TO PLTFS' OPPOSITION TO
           ITS SOMF AND REPLY TO PLTFS' ADDITIONAL FACTS.

01/22/2015 Party(s):   BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
                       BUDGET GROUP INC
           MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 01/20/2015
           M MICHAELA MURPHY , JUSTICE
           COPIES TO PARTIES/COUNSEL                                          REPLY TO PLTF'S
           OPPOSITION TO BUDGET DEFTS MOTION SJ DUE 1/20, AND PAGE LIMIT EXTENDED TO 10 PAGES

01/22/2015 Party(s):   JOSHUA HENDERSON (PR),STACEY HENDERSON
           MOTION - MOTION FOR LEAVE GRANTED ON 01/20/2015
           M MICHAELA MURPHY , JUSTICE

01/30/2015 HEARING - MOTION SUMMARY JUDGMENT CONTINUED ON 01/30/2015
           TO 2/4

01/30/2015 HEARING - MOTION TO DISMISS CONTINUED ON 01/30/2015
           TO 2/4

01/30/2015 HEARING - MOTION TO DISMISS SCHEDULED FOR 02/04/2015 at 02:45 p.m.
           M MICHAELA MURPHY , JUSTICE

01/30/2015 HEARING - MOTION TO DISMISS NOTICE SENT ON 01/30/2015

01/30/2015 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 02/04/2015 at 02:45 p.m.
           M MICHAELA MURPHY , JUSTICE

01/30/2015 HEARING - MOTION SUMMARY JUDGMENT NOTICE SENT ON 01/30/2015

02/04/2015 HEARING - MOTION SUMMARY JUDGMENT HELD ON 02/04/2015
           M MICHAELA MURPHY , JUSTICE
           Defendant's Attorney: TRACY HILL
           Plaintiff's Attorney:  CALEB GANNON
           ALSO PRESENT:  PETER BICKERMAN, ESQ. AND MICHAEL SAUCIER, ESQ.            TAPE 2021,
           INDEX 2375-3806                                           UNDER ADVISEMENT

02/04/2015 HEARING - MOTION TO DISMISS HELD ON 02/04/2015
           M MICHAELA MURPHY , JUSTICE
           Defendant's Attorney: TRACY HILL
           Plaintiff's Attorney:  CALEB GANNON
           ALSO PRESENT:  PETER BICKERMAN, ESQ. AND MICHAEL SAUCIER, ESQ.            TAPE 2021,
           INDEX 2375-3806                                           UNDER ADVISEMENT

02/04/2015 CASE STATUS - DECISION UNDER ADVISEMENT ON 02/04/2015
           M MICHAELA MURPHY , JUSTICE
           MOTION TO DISMISS AND MOTION SJ

05/15/2015 Party(s): TRESSA SPRINGMANN (PR)
MOTION - MOTION TO DISMISS GRANTED ON 05/14/2015
COPIES TO PARTIES/COUNSEL - ORDER INCORPORATED BY REFERENCE          COURT GRANTS
SUMMARY JUDGMENT AGAINST PLTFS' WRONGFUL DEATH CAUSE OF ACTION.  COURT GRANTS SUMMARY
JUDGMENT AGAINST PLTFS' CAUSE OF ACTION FOR PUNITIVE DAMAGES AS TO MS. SPRINGMANN.

05/15/2015 FINDING - JUDGMENT DETERMINATION ENTERED ON 05/14/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL

ORDER - PARTIAL SUMMARY JUDGMENT ENTERED ON 05/14/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL
Judgment entered for TRESSA SPRINGMANN (PR) and against JOSHUA HENDERSON (PR), STACEY
HENDERSON.

05/15/2015 Party(s):  BUDGET TRUCK RENTAL LLC,CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS
BUDGET GROUP INC
MOTION - MOTION SUMMARY JUDGMENT GRANTED ON 05/14/2015
M MICHAELA MURPHY , JUSTICE
COPIES TO PARTIES/COUNSEL                                         GRANTED AS TO
DEFT BUDGET TRUCK RENTAL, LLC

05/15/2015 Party(s):  CENTRE POINT FUNDING LLC,AVIS BUDGET CAR RENTAL LLC,AVIS BUDGET GROUP INC
FINDING - PARTIAL DISMISSED W/ PREJUDICE ENTERED ON 05/14/2015
SEE FOOTNOTE 1, ORDER ON BUDGET TRUCK RENTAL LLC'S MOTION SJ

05/15/2015 FINDING - JUDGMENT DETERMINATION ENTERED ON 05/14/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL                                       THE COURT GRANTS SUMMARY
JUDGMENT AGAINST PLTFS' CAUSE OF ACTION FOR PUNITIVE DAMAGES AS TO DEFT BUDGET TRUCK.  THE
COURT GRANTS SUMMARY JUDGMENT AGAINST PLTFS' CAUSE OF ACTION FOR PUNITIVE DAMAGES AS TO
BUDGET TRUCK.

05/15/2015 ORDER - SUMMARY JUDGMENT ENTERED ON 05/14/2015
M MICHAELA MURPHY , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL                                       THE COURT GRANTS SUMMARY
JUDGMENT AGAINST PLTFS' CAUSE OF ACTION FOR PUNITIVE DAMAGES AS TO DEFT BUDGET TRUCK.  THE
COURT GRANTS SUMMARY JUDGMENT AGAINST PLTFS' CAUSE OF ACTION FOR PUNITIVE DAMAGES AS TO
BUDGET TRUCK.
Judgment entered for BUDGET TRUCK RENTAL LLC and against JOSHUA HENDERSON (PR), STACEY
HENDERSON.

05/15/2015 FINDING - FINAL JUDGMENT CASE CLOSED ON 05/15/2015

A TRUE COPY
ATTEST: _____
Clerk